OPINION OF THE COURT
Hancock, Jr., J.
This is an appeal from a dismissal of a CPLR article 78 proceeding challenging an order on consent of the Department of Environmental Conservation (DEC) dated May 12, 1987 pertaining to the 87-acre landfill located on Blydenburgh Road, Town of Islip, Long Island. The order on consent was entered in a proceeding brought by the DEC against respondents Town of Islip and Islip Resource Recovery Agency.[1] The consent order contains several terms but the principal one about which the appeal centers modifies an earlier order on consent entered on August 5, 1980 in a DEC enforcement proceeding under which the Town of Islip was permitted to continue to use the landfill prior to final capping and closure in accordance with a plan to be submitted and approved by the DEC. The August 5 order provided that additions to the landfill prior to rounding off for capping should be made at a slope of 1 foot vertically to 6 horizontally. The disputed term in the May 12, 1987 order modifies this provision by increas *297 ing the slope of the landfill to 1 foot to 3 feet; it also provides that the final permitted level of the landfill be raised to a height not in excess of 300 feet above sea level. Additionally, the May 12, 1987 order provides for the burial of ash from the Town’s resource recovery system in the northwest portion of the landfill (area F).
 In their appeal, by permission of this court, from the order of the Appellate Division unanimously affirming dismissal of the article 78 proceeding brought to annul the DEC May 12, 1987 consent order, petitioners and the intervenor-petitioner Board of Education advance two chief contentions: (1) that the order on consent violates the Long Island Landfill Closure Law because the increase in the permissible slope and in the maximum height and the permitted use of area F constitute "expansion^] to-an existing landfill which is located in a deep flow recharge area” (ECL 27-0704 [3]) which were approved by the DEC without meeting the statutory requirements that the Commissioner first conduct a public hearing and make a finding that "no other feasible means of solid waste management is available” (id,.); and (2) that the order on consent is invalid for noncompliance with the State Environmental Quality Review Act (SEQRA) inasmuch as it was not an order entered in an enforcement proceeding and, thus, was not excluded from compliance by the provision in ECL 8-0105 (5) (i) exempting from SEQRA "enforcement proceedings or the exercise of prosecutorial discretion”.[2] For reasons expressed hereafter, we hold that Supreme Court and the Appellate Division properly rejected these contentions and that the order should be affirmed.
I
The Blydenburgh Landfill has been in operation since 1927. Its operation predated enactment of various legislative measures designed to protect the environment and to prevent contamination from solid waste disposal sites — as, for exam- *298 pie, the Solid Waste Management and Resource Recovery Facilities Act (ECL art 27, tit 7, eff Sept. 1, 1973), SEQRA (ECL art 8, eff Sept. 1, 1976), the Long Island Landfill Closure Law (ECL art 27-0704, eff Dec. 18, 1983), and the Inactive Hazardous Waste Disposal Site Law (ECL art 27, tit 13, eff Aug. 26, 1979). For this reason, during most of its existence the entire Blydenburgh Landfill was operated without liners or other protection against contamination from seepage.
In the 1970s DEC became concerned that the landfill might be contaminating the ground water. It began discussions that have developed into a continuing series of disagreements between the DEC and the Town over the landfill’s operation. The DEC commenced proceedings to compel the Town to close the landfill and to make plans for alternate means of refuse disposal. These proceedings culminated in the August 5, 1980 order on consent which required the Town to cease accepting additional refuse at the existing unlined landfill except for vertical additions to the extent needed for rounding off and capping the landfill provided, however, that these additions be made at a slope of 1 foot on 6 feet. The August 5, 1980 order on consent imposed other requirements on the Town, including, most significantly, the direction that it submit a plan for double-lining and constructing a leachate recovery system for a new 16-acre section of the landfill (area A). The Town was also directed to develop a methane gas venting plan and to attempt various alternate disposal options including source separation and incineration. It was contemplated that the new lined 16-acre section at Blydenburgh together with a large undeveloped site in Edgewood — which the Town of Islip had acquired for a future landfill — would meet the Town’s needs.
Disputes between the Town and the DEC over the acceptability of respondents’ plans for the new lined 16-acre section at Blydenburgh and its compliance with other provisions of the August 5, 1980 order persisted and eventually led to litigation. Cross actions were brought between the parties in Supreme Court, Suffolk County, which resulted in a consent judgment entered on January 13, 1983. The consent judgment changed the August 5, 1980 order and imposed additional obligations on the Town. The requirement of the August 5, 1980 order on consent pertaining to closure of the unlined portion of the landfill including the 1 on 6 slope remained in effect, however, as did the direction that the Town proceed with the lined 16-acre area (area A).
*299 Despite the settlement of the litigation in the 1983 consent judgment, the DEC and the Town of Islip continued to disagree over the Town’s compliance with the judgment and with the remaining provisions of the August 5, 1980 consent order. It was during this period that the Long Island Landfill Closure Law (ECL 27-0704) became law having been enacted on June 29, 1983 to become effective on December 18, 1983. This statute outlawed any new landfill in a deep flow recharge area (ECL 27-0704 [3]). Also, no existing landfill in a deep flow recharge area, such as the Town’s landfill at Blydenburgh, could, with very limited exceptions, continue in operation after December 18, 1990 (ECL 27-0704 [5]). Because the site which the Town had acquired at Edgewood was also in a deep flow recharge area, the Town, as a consequence of the new statute, could no longer count on the future use of a landfill at that location. In a new legal proceeding the Town sought to challenge the Long Island Landfill Closure Law on the ground that it was beyond the Legislature’s power to enact special legislation pertaining to the property, affairs or government of a local government (see, NY Const, art IX, § 2 [b] [2]). Our court ultimately rejected the Town’s contentions, holding the legislation valid as relating to a matter of general State concern (see, Matter of Town of Islip v Cuomo, 64 NY2d 50, 52, 58).
Thereafter, in September 1985, the Town petitioned the DEC pursuant to the provisions of the Long Island Landfill Closure Law for permission to make a limited lateral expansion of the Blydenburgh Landfill into an area immediately south of the existing site. The DEC, after conducting an "expansion” hearing as required by ECL 27-0704 (3), denied the request. It concluded that the Town could dispose of its waste by providing off-island trucking and that the Town had, therefore, not made the required statutory showing that "no other feasible means of solid waste management [was] available” (ECL 27-0704 [3]). The Town resorted once more to the courts to challenge the DEC’S denial of its request for lateral expansion. Its CPLR article 78 proceeding was dismissed and the determination of the DEC unanimously confirmed by the Appellate Division (Town of Islip v Williams, 126 AD2d 276, Iv denied 70 NY2d 602). In confirming, the Appellate Division held that although the acceptability of the cost of off-island trucking might be debatable, "the Commissioner’s determination that such cost is not so exorbitant as to render a program of off-island trucking 'infeasible’ is not so one-sided as to be *300 irrational” and that "the Commissioner’s interpretation of the statute, not being irrational, should be upheld (Matter of Bernstein v Toia, 43 NY2d 437, 448; Matter of Howard v Wyman, 28 NY2d 434, 438; Town of Hempstead v Flacke, supra)” (id., at 280).
Faced with the impossibility of obtaining more landfill capacity through lateral expansion at Blydenburgh and with the necessity of abandoning its plans for a new landfill at Edgewood because of the passage of the Long Island Landfill Closure Law, the Town consented to the DEC order of May 12, 1987 — the subject of this litigation. Besides the above-described amendments of the March 5, 1980 order pertaining to the slope and maximum height and the direction that area F be used for ash burial, the May 12, 1987 order on consent contains several significant provisions. By its terms, the Blydenburgh Landfill is treated as a waste disposal site subject to the provisions of ECL article 27, title 13 pertaining to inactive hazardous waste disposal sites. The consent order provides that the Town will enter into a further order on consent requiring it to undertake a "Remedial Investigation and a Feasibility Study of Remedial Options CRI/FS’) as well as remediation of the Landfill” as an inactive hazardous waste disposal site; that it develop and implement a work plan for the remediation of the inactive hazardous waste disposal site subject to DEC approval and in compliance with the requirements established by the United States Environmental Protection Agency; that it must provide the DEC with all information and data in its possession regarding the use of the Blydenburgh Landfill for disposal of hazardous wastes; that the Town pay to the DEC a sum not to exceed $125,000 per year for the employment of full-time monitors at the landfill who will assure that the landfill is used only for nonhazardous wastes from the Town of Islip and that such waste is deposited in accordance with applicable rules and regulations and the terms of the consent order; that it will install a leachate barrier and collection system in two portions of the landfill (area C and area F); that the Town will modify the existing gas collection system at the landfill to prevent off-site migrations of toxic wastes and explosive gases; and that it must enter into an action program immediately for the recycling of the Town’s municipal waste to the maximum extent practicable and consistent with the New York State Waste Management Plan. Under the order on consent, the DEC retains jurisdiction over the landfill and over the Town’s compliance *301 with the terms of the order and the applicable statutes, rules and regulations. In consenting to the order, the Town waives any right to a hearing including the right to contest the determination that the Blydenburgh Landfill is an inactive hazardous waste site posing a significant threat to the environment and that it must, therefore, develop and implement a remedial program (see, ECL 27-1313 [3], [4]).[3]
On May 15, 1987, petitioner NYPIRG commenced the instant CPLR article 78 proceeding seeking to annul the May 12, 1987 consent order and to enjoin the parties from acting on that order. The Hauppauge Union Free School District Board of Education was thereafter permitted to intervene as a petitioner. The court dismissed the petition holding, among other things, that ECL 27-0704 (3) does not encompass vertical expansions; that respondents were not required to follow SEQRA since the May 12 order was an act of prosecutorial discretion in an enforcement proceeding and, therefore, not an action for purposes of SEQRA (see, ECL 8-0105 [5] [i]); and that the Ashfill Law was not violated because it applies only to the selection of a regional ashfill site. The Appellate Division unanimously affirmed for the reasons stated at Supreme Court.
II
We address first petitioner’s contention that the order on consent of May 12, 1987 is invalid because it violates the Long Island Landfill Closure Law (ECL 27-0704). ECL 27-0704 (3) provides that, as of December 18, 1983: (1) all new landfills are prohibited in deep flow recharge areas and (2) expansions to existing landfills in such areas are prohibited except where, among other things, the Commissioner finds, after a public hearing, that no other feasible means of waste management is available.[4] Petitioners maintain that compliance with the *302 statute was required because the order on consent constitutes the Commissioner’s approval of "a limited expansion of [an] existing landfill which is located in a deep flow recharge area” (ECL 27-0704 [3]). Their argument depends upon the interpretation of the word "expansion” as including the vertical expansion of the landfill which would necessarily result when municipal solid waste from the Town is added to the existing landfill under the provisions permitting a steeper slope for the landfill and increasing its maximum height to 300 feet. The Town argues that compliance with the statute was not required because it applies only to expansions which are lateral or horizontal.
We agree with Supreme Court and the Appellate Division that "expansion” was intended to include lateral but not vertical expansions. We reach this construction from the sense of the word "expansion” as it is used in its immediate statutory context and as part of the entire Long Island Landfill Closure Law (see, McKinney’s Cons Laws of NY, Book 1, Statutes § 97). This construction, we observe, accords with the meaning of the term "expansion” that has been continuously accepted by the DEC in its administration of the statute (see, McKinney’s Statutes § 129). Moreover, it is consistent with the underlying purpose and statutory scheme of the Long Island Landfill Closure Law as seen from its provisions and the applicable legislative history (see, McKinney’s Statutes § 96; Matter of Frew Run Gravel Prods. v Town of Carroll, 71 NY2d 126, 131-134).
The Long Island Landfill Closure Law (ECL 27-0704) contains no definition of the term "expansion”. From the word’s context in subdivision (3), however, it seems evident that it could not have been meant to include the vertical expansion which necessarily results from piling refuse on what has already accumulated in a landfill. New landfills and expansions of existing landfills are treated together in the first sentence of the section: "no person shall commence operation, *303 including site preparation, of a new landfill or of an expansion to an existing landfill” (ECL 27-0704 [3] [emphasis added]). Significantly, the prohibition of new landfills and expansions of existing landfills — which the quoted language imposes — is with respect to the commencement of their operation and the preparation of their sites — acts which could naturally and logically pertain to new landfills and newly expanded areas adjacent to existing landfills but not to vertical expansions, which would not entail the commencement of operations or require site preparation.
This meaning of the word "expansion” as applying only to expansions which are lateral comports with the interpretation of the term adopted by the Commissioner from the time of the statute’s inception in 1983. In the guidelines for the implementation of the Long Island Landfill Closure Law adopted by the Commissioner in February 1984, "expansion” is defined as "a lateral extension of a landfill beyond the boundaries of an existing landfill” (Long Island Landfill Law Implementation Guidelines § 3.8).[5] This is the intended meaning of the term as it has been used consistently by the Department in its application of ECL 27-0704 (3) including its determination of Islip’s request for a lateral expansion which the DEC ultimately rejected (see, Determination of Commissioner of DEC Project No. 10-86-0673).
The Commissioner’s construction is based, in part, on the DEC’s technical expertise and its judgment that a vertical expansion, as opposed to a lateral expansion, does not pose a significant threat to the ground water because "recharge is among other things, a function of areal extent”, and there is a "reduced potential for leachate formation from a vertical versus a lateral expansion”. Inasmuch as this appears to be a reasonable reading of the statute based on the technical expertise of the agency charged with the responsibility of administering the Long Island Landfill Closure Law, we agree with Supreme Court that there is no reason for rejecting it (Matter of Bernstein v Toia, supra, at 448; cf., Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459; see also, Town of Islip v Williams, 126 AD2d 276, 280, Iv denied 70 NY2d 602, supra [where the court, in confirming the DEC’s rejection of *304 respondents’ lateral expansion, accepted the Commissioner’s interpretation of the word "feasible” as part of his conclusion that off-island trucking was a feasible alternate means of refuse disposal]).
Further, the Commissioner’s construction of ECL 27-0704 (3) —as applying only to lateral expansions of existing landfills— is consistent with the statute’s underlying purpose of protecting Long Island’s sole source aquifer and its scheme of phasing out landfills and accelerating the transition to resource recovery (see, Matter of Town of Islip v Cuomo, 64 NY2d 50, supra; Mem of State Executive Dept in support of L 1983, ch 299, reprinted in 1983 McKinney’s Session Laws of NY, at 2502-2503). While the statute prohibits all new landfills in deep flow recharge areas and greatly restricts expansions of existing landfills, it recognizes that the transition to resource recovery will require time for completion and the accommodation of the needs for municipal solid waste disposal in the heavily populated area during the transition period. Thus, the scheme contemplates the continued use of existing landfills for municipal solid waste as approved and controlled by the Commissioner during a seven-year period by the end of which the phase-out is to be accomplished. The Commissioner’s application of the statute is consistent with the aim of safeguarding the aquifer because, as noted, it reflects the Department’s expert judgment that there is a reduced potential for leachate formation from a vertical as opposed to a lateral expansion.
Finally, we reject petitioners’ contention that the provisions of the May 12, 1987 consent order pertaining to area F constitute not a vertical expansion but a lateral expansion into a new area which would be prohibited unless specifically authorized by the Commissioner pursuant to ECL 27-0704 (3). The simple answer is that the record contains unrefuted affidavits of officials of the DEC, based on excavations, that area F is not a new site but a solid waste landfill site used before the effective date of the Long Island Landfill Closure Law. The courts below, in rejecting petitioners’ contention, have apparently accepted the Commissioner’s position that the addition of material on area F constituted a vertical expansion and not a lateral expansion requiring an application under the statute. No reason has been shown why we should do otherwise.
*305 III
Notwithstanding our holding that the May 12, 1987 order on consent is not an expansion requiring an application in compliance with ECL 27-0704 (3), petitioners maintain that the order is invalid because the Town did not comply with SEQRA. The contention depends on the consent order being an action within the meaning of ECL 8-0105 (4), thereby triggering the requirements for SEQRA compliance. The contention of the DEC, accepted by the courts below, however, is that the order on consent is expressly exempted from the definition of "action” by ECL 8-0105 (5) which, in pertinent part, states:
" 'Actions’ do not include:
"(i) enforcement proceedings or the exercise of prosecutorial discretion in determining whether or not to institute such proceedings”.
Petitioners argue that the order on consent is not truly an enforcement proceeding because it "fails to impose any substantially new obligations on the Town” and that, because the permitted vertical expansion will assertedly accommodate an estimated 900,000 tons of solid waste and extend the life of the Blydenburgh Landfill for approximately three years, the order should be regarded as an expansion agreement requiring SEQRA compliance. On the other hand, in support of its position, the DEC has filed an affidavit of the Executive Deputy Commissioner detailing the lengthy history of the Department’s enforcement efforts with respect to the Blydenburgh Landfill. The affidavit points out, among others things, that the May 12, 1987 order on consent was a modification of the August 5, 1980 order, which, itself, was an order made in an enforcement proceeding and, as such, exempt from SEQRA under ECL 8-0105 (5).
The DEC is the agency charged with the administration of SEQRA. The Commissioner has been given authority to "adopt rules and regulations implementing the provisions” of SEQRA (ECL 8-0113 [1]) including, specifically, regulations pertaining to the definitions of the terms used in SEQRA (ECL 8-0113 [2] [a]). Pursuant to this authority, the Commissioner has adopted a more detailed definition of "exempt action” which includes the following: "civil or criminal enforcement proceedings, whether administrative or judicial, including a particular course of action specifically required to be undertaken pursu *306 ant to a judgment or order, or the exercise of prosecutorial discretion” (6 NYCRR 617.2 [q] [1]).
We conclude that the Commissioner’s application of the statute (ECL 8-0105 [5]) and of his regulation (6 NYCRR 617.2 [q] [1]) in exempting the May 12, 1987 order on consent — as an order entered in an enforcement proceeding in the exercise of the Department’s prosecutorial discretion — was reasonable and that it should, therefore, be upheld (see, Matter of Bernstein v Toia, 43 NY2d 437, 448, supra; Matter of Howard v Wyman, 28 NY2d 434, 438, supra). We observe that, contrary to petitioners’ contentions, the May 12, 1987 order on consent does impose substantial obligations on the Town including, most significantly, the binding determination that the Blydenburgh Landfill is an inactive hazardous waste disposal site constituting a significant threat to the environment and the provision of the order that the Town comply with the stringent remedial requirements and enforcement provisions of ECL 27-1313.
Moreover, as we noted in Flacke v Onondaga Landfill Sys. (69 NY2d 355, 362, 363), the "regulation of solid waste management facilities is a legislative function delegated to the DEC by statute (ECL 27-0103)” and "ECL 71-2727 (1) specifically provides that the Commissioner may take 'such remedial measures as may be necessary or appropriate’ and expressly authorizes initiation of any appropriate action or proceeding to enforce the provisions of article 27, any rule or regulation promulgated pursuant thereto and any order issued or penalty assessed thereunder (ECL 71-2727 [2])”. The Commissioner, it appears, has exercised his statutory authority to control the operation of landfills on Long Island other than the one at Blydenburgh. Indeed, at the time of enactment of the Long Island Landfill Closure Law, 11 of the 15 landfills in Suffolk and Nassau Counties were, like the Blydenburgh Landfill, being operated under orders on consent. It thus seems evident that the May 12, 1987 consent order — and the vertical expansion permitted thereby — were matters well within the prosecutorial discretion given the Commissioner to issue and modify orders in enforcement proceedings in connection with violations of ECL article 27 (see, Flacke v Onondaga Landfill Sys., supra, at 362, 363). We conclude, then, that Supreme Court and the Appellate Division properly accepted the DEC’s determination that the May 12, 1987 order was exempt as a matter involving prosecutorial discretion in an enforcement proceeding (see, ECL 8-0105 [5]; 6 NYCRR 617.2 [q] [1]).
*307 The order should, therefore, be affirmed, with costs.

. Respondents Town of Islip and Islip Resource Recovery Agency will be referred to collectively as Islip or the Town. Respondent Williams will be referred to as the Commissioner or DEC. Respondent Harrelson has defaulted and is not a party to this appeal.

. Petitioner and intervener also contend that the consent order provision which allows the disposal of ashes in area F violates the Ashfill Law (L 1985, chs 358, 359), because area F is within 3,000 feet of a school. This argument is without merit. The Ashfill Law sets forth the procedure to be followed in the selection of a regional ashfill disposal facility for Nassau and Suffolk Counties. The 3,000-foot requirement only applies to prospective sites for this regional ashfill and has no relevance to local facilities (see, L 1985, ch 358, § 4 [2] [b] [iii], reprinted in McKinney’s Cons Laws of NY, Book l?i/2, ECL 27-0704, 1988 Cum Ann Pocket Part).

. Notwithstanding petitioners’ assertions and the suggestion to the contrary in the dissent, there is nothing in the May 12, 1987 order on consent or the record pertaining to the enforcement proceedings conditioning the vertical expansion on Islip’s agreement to take the residue from the "infamous garbage barge” (see, dissenting opn, at 308). Indeed, the order on consent does not mention the garbage barge.

. ECL 27-0704 (3) provides: "On or after the effective date of this section and except as provided herein, no person shall commence operation, including site preparation, of a new landfill or of an expansion to an existing landfill which is located in a deep flow recharge area. However, the commissioner, after conducting a public hearing, may approve a limited expansion *302 of any existing landfill in a deep flow recharge area for the sole purpose of providing for solid waste disposal capacity prior to the implementation of a resource recovery system. The commissioner shall not approve any such expansion unless he finds that the owner of such landfill is a municipality that is implementing a resource recovery system which is acceptable to the commissioner and which will be operational no later than seven years after the effective date of this section and that no other feasible means of solid waste management is available, taking into account technological, economic and other essential factors.”

. The guidelines were drafted with input from the New York State Legislative Commission on Water Resource Needs of Long Island and after notice to the various towns. They were adopted after issuance of a negative declaration under SEQRA was published in the Environmental Notice Bulletin.