72 N.Y.2d 708 (1988)
In the Matter of Lee Pokoik, Respondent,
v.
Department of Health Services, County of Suffolk, et al., Appellants.
Court of Appeals of the State of New York.
Argued November 15, 1988.
Decided December 20, 1988.
E. Thomas Boyle, County Attorney (Derrick J. Robinson of counsel), for the Department of Health Services, County of Suffolk, appellant.
Frank A. Isler for the Village of Ocean Beach, appellant.
Irving N. Selkin for respondent.
Barry L. Katz for Fire Island Association, Inc., amicus curiae.
Judges SIMONS, ALEXANDER and HANCOCK, JR., concur with Judge TITONE; Judge BELLACOSA dissents and votes to reverse in a separate opinion in which Chief Judge WACHTLER and Judge KAYE concur.
*710 TITONE, J.
The Village of Ocean Beach, which is located on Fire Island, *711 is a small community containing several publicly accessible beaches within its borders. Although access to the Village is limited because motor vehicles are not generally permitted, nonresidents, who may arrive by ferry or boat, often visit the Village's beaches. Aware that its beaches are used by the public, the Village furnishes lifeguard protection for bathers at the taxpayers' expense. However, no other facilities for beachgoers are maintained. It is undisputed that there are no toilet or other sanitary facilities available for the use of nonresident beachgoers.
Petitioner commenced the present article 78 proceeding to compel respondent, the Suffolk County Department of Health Services, to enforce Public Health Law § 1340 (2) (a) by requiring the respondent Village to provide toilet facilities for beachgoers. The trial court dismissed the petition after concluding that the statute's history indicated that municipalities that maintain public bathing places free of charge were intended to be exempt from the requirements of the statute. The Appellate Division disagreed, holding that the absence of an express exemption in the statute is dispositive. Accordingly, the court reinstated the petition and remitted for further development of the record on the question whether toilet facilities that are "conveniently accessible" to beachgoers (10 NYCRR former 6.15 [a]) may be constructed on the Village's beaches, some of which are included within a Federally designated "Dune District" (see, 36 CFR 28.3 [c]; 28.4 [b] [2]), without running afoul of the Fire Island National Seashore Act (16 USC § 459e). Following its determination, the Appellate Division granted respondents leave to appeal and certified the following question of law: "Was the order of this court dated March 21, 1988, properly made?"
We agree with the Appellate Division that the Village is not exempt from the requirements of Public Health Law § 1340 (2) (a). That statute imposes a duty upon the owner of "any bathing establishment of any kind" to "provide separate toilet rooms * * * constructed in a manner approved by the local board of health * * * and in such a way as not to contaminate the waters used by the bathers". Although Public Health Law § 1341, which deals with safety requirements at bathing establishments, exempts municipally maintained bathing establishments from its terms (see, Public Health Law § 1341 [5]), Public Health Law § 1340, which deals with the entirely separate area of sanitary requirements, contains no analogous provision for a municipal exemption. Similarly, *712 while subdivision (1) of Public Health Law § 1340, which prohibits the maintenance of "bathing establishments" within 500 feet of a sewer connection, applies only to bathing establishments operated "for pay, or any consideration," subdivision (2) of that same section is expressly made applicable to "any bathing establishment of any kind". Thus, the plain language of the statute belies any claim that the beach facilities at issue here are exempt from the "toilet room" requirement because they are owned by a municipality and made available to the public without any charge.
It is well established that "[t]he fact that an act contains no exception or saving clause creates a strong presumption that the Legislature intended none" (McKinney's Cons Laws of NY, Book 1, Statutes § 213, at 374; see also, § 74). This presumption is even stronger where, as here, the precise exceptions that are claimed to be implicit are explicitly provided for elsewhere in the statute (McKinney's Statutes § 240; see, Eaton v New York City Conciliation & Appeals Bd., 56 N.Y.2d 340).
The presumption that no exemptions for municipalities or beaches operated without charge were intended, which flows quite naturally from the absence of any exempting language in the statute, is not overcome in this case by an analysis of the statute's history. Before the Public Health Law was recodified in 1953 (L 1953, ch 879), the rules governing both sanitary and safety requirements for "bathing establishments" were all collected in former Public Health Law § 312. The first requirement of that lengthy provision was made applicable only to "bathing establishments" operated "for pay, or any consideration," and subsequent references in the statute to "such bathing establishments" made clear that the rest of its requirements were similarly limited in effect. Further, the last sentence of the statute explicitly exempted municipalities from all of the statute's requirements (L 1905, ch 454, § 1, as amended by L 1942, ch 456; see, Curcio v City of New York, 275 N.Y. 20).
When section 312 was reenacted under the recodified Public Health Law, it was placed under title 6 and divided into two substantive sections (Public Health Law §§ 1340 [sanitary requirements], 1341 [safety requirements]), and a third section dealing with enforcement (§ 1342). The exemption for municipalities was carried over into the substantive sections dealing with safety requirements, but no similar exemption was included in the section dealing with sanitary requirements. *713 Additionally the "for pay" limitation was retained in the subdivision addressing the location of sewer connections but was omitted from the subdivision requiring the erection of toilet facilities (Public Health Law § 1340 [1], [2] [a]).
Relying upon this history and a routine statement by the recodification's drafters that "[n]o substantive changes in the existing law were reflected in the new recodified law" (State Health Dept Mem, 1953 NY Legis Ann, at 202), respondents would have us conclude that these rather significant omissions were simply the products of legislative oversight that may be corrected by judicial construction. We decline this invitation to "correct" a legislative enactment to make it correspond to respondents' belief as to what the Legislature probably meant. Although it has been stated that, absent a clear expression of legislative intent, minor changes in verbiage appearing in recodifications should not be construed as working a substantive change in a long-standing rule (see, e.g., Matter of Brooklyn Union Gas Co. v Commissioner of Dept. of Fin., 67 N.Y.2d 1036, 1039; Schneider v Schneider, 17 N.Y.2d 123, 127), such statements have no application in a case such as this, where an entire sentence of a predecessor statute containing a single, integrated concept (i.e., an exemption for municipalities) has been omitted and the statute as a whole has been completely recast. "If some parts of a statute are omitted upon its revision, it is not the function of the courts to supply such parts; on the contrary, those parts are considered as repealed" (McKinney's Cons Laws of NY, Book 1, Statutes § 422, at 596).[1]
By urging that we take the drafters' declaration of "no intended change" literally, respondents are, in effect, asking us to ignore all of the legislatively drawn distinctions and to rewrite the law to conform to its prerevision form. Neither the case law nor the rules of statutory construction permits such extensive judicial redrafting (see, Matter of Barton v Lavine, 38 N.Y.2d 785, 787).
*714 Respondents' remaining arguments are unpersuasive. The contention that the Village is not operating a "bathing establishment" within the meaning of Public Health Law § 1340 lacks merit. The contention is based upon a purported distinction between "bathing establishments" and "bathing beaches", terms which are used in the disjunctive elsewhere in article 13, title 6 of the Public Health Law (Public Health Law § 1341 [5]). However, while the body of Public Health Law § 1340 refers only to "bathing establishments", the section is entitled "[b]athing places; sanitary requirements," providing at least some indication that the Legislature used the terms interchangeably. In the absence of a definitive showing that the Legislature considered "bathing establishments" and "bathing beaches" to have different characteristics and that the Village's beaches fall only within the latter category, we must conclude that the Village's beaches are within section 1340's intended coverage.
Respondents' alternative argument  that requiring the construction of toilet facilities on the Village's beaches would violate the Federal rules for "Dune Districts" under the Fire Island National Seashore Act (16 USC § 459e; see, 36 CFR part 28)  cannot be resolved on the present record. Although most of the Village's beaches are located in a designated "Dune District", within which construction is absolutely prohibited (see, 36 CFR 28.3 [c]; 28.4 [b] [2]), a question of fact remains as to whether there are locations that are within the Village but outside of the "Dune District" where a toilet facility available to beachgoers may be erected. Further, the possibility that portable toilet facilities may be installed without bringing the Village into conflict with the "Dune District" rules has yet to be explored. Thus, the Appellate Division's decision remitting for further proceedings was appropriate.[2]
Finally, to the extent that there may be fiscal or practical *715 consequences to requiring municipal bathing establishments to conform to the Public Health Law's strictures concerning toilet facilities, those concerns are more appropriately addressed to the Legislature, which may weigh the costs against the public health interests involved. Indeed, the record before us is devoid of evidence to support the dissenters' contentions that constructing and maintaining toilet facilities pose "a costly and onerous burden among the various statutory requirements" (dissenting opn, at 718). Moreover, the dissenters' exclusive emphasis on the supposed high cost and difficulty of maintaining toilet facilities ignores the competing value of expanding the public's use of the Village's beaches by making them practically more accessible to the nonresidents who might wish to use them. In the final analysis, issues such as whether the Legislature could sensibly require noncommercial beach owners to provide toilet facilities while exempting them from other sanitary requirements and whether the other safety and sanitary requirements of the statute "are equally salutary and important from a public health perspective" (see, id.) are judgments that only the Legislature should make.[3]
Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.
BELLACOSA, J. (dissenting).
Because I believe the Village's public beaches are not and were not intended to be "bathing establishments" within the words or purview of this regulatory provision (Public Health Law § 1340), I dissent and vote to reverse the order of the Appellate Division and reinstate the judgment of the Supreme Court dismissing the petition.
The Village of Ocean Beach  part of Fire Island, Suffolk County  is a small residential community bordered on the south by the Atlantic Ocean and on the north by the Great South Bay. The Village, within the Federally protected Fire Island National Seashore (16 USC § 459e), enjoys publicly accessible open beaches for which it has furnished some lifeguard protection since 1921 at Village taxpayers' expense. *716 No other services or facilities are provided or are available at the beaches. There are no admission fees, restrictions, or other considerations imposed for anyone to use the Village's beaches.
Petitioner, a Village resident, seeks to compel the Suffolk County Department of Health to enforce section 1340 (2) of the Public Health Law by requiring the Village to provide toilet facilities for the use of beachgoers. Respondents in the article 78 proceeding  appellants here  moved for summary judgment asserting that the Village beach is not required to provide toilet facilities because (1) the Public Health Law expressly exempts municipal beaches from the safety and sanitary requirements; and (2) the statute is only applicable to commercial, fee-generating "bathing establishments". I agree that the claimed municipal exemption is unavailing. However, the Village should prevail on the second ground that the toilet facilities requirement is not applicable at all to its noncommercial untariffed beaches because it is not a "bathing establishment" just because it happens to provide a lifeguard.
The sanitary and safety requirements for public "bathing establishments" are prescribed in title 6 of the State Public Health Law, enacted in its present form as part of a recodification of the entire Public Health Law (L 1953, ch 879). Prior to the recodification, the pertinent requirements were found in former Public Health Law § 312, which provided in part: "It shall be unlawful for any person to maintain, either as owner or lessee, any bathing establishment of any kind, in this state, for the accommodation of persons, for pay, or any consideration, at a point less than five hundred feet from any sewer connection * * * it shall be the duty of such owner or lessee [emphasis added] to provide separate toilet rooms * * * it shall be the duty of every person maintaining, as owner or lessee, any bathing establishment of any kind along the seashore of this state for the accommodation of persons for pay, to provide, for the safety of such bathers * * * Nothing in this section shall be construed in any way to affect any bathing establishments, in any city or municipality, or any bathing establishments or bathing beaches operated by a regional state park commission, at which there is maintained at public expense a life-saving guard" (added L 1909, ch 49, amended L 1942, ch 456 [emphasis added]).
Under this predecessor version, the Village's beaches and bathing establishments that were untariffed enjoyed a complete *717 and express exemption from the sanitary and safety requirements imposed on tariffed bathing establishments. In the 1953 recodification, the sanitary and safety requirements applicable to tariffed bathing establishments were relocated in three separate sections. The recast Public Health Law § 1340 (1) and its counterpart Public Health Law § 1341 continued to exempt from the sewage and safety requirements all bathing establishments that were free of charge. The "municipal exemption" was recast in section 1341 (5) to specify the exemption of municipal bathing establishments and beaches operated by the State Park Commission only as to the safety requirements of the statute.
The rearranged subdivision relating to toilet facilities, Public Health Law § 1340 (2) (a)  the key provision at issue  omitted the formerly qualifying and referencing word "such" and prescribed in pertinent part as follows:
"2. It shall be the duty of the owner, lessee or any other person maintaining any bathing establishment of any kind:
"(a) to provide separate toilet rooms, with water-closets properly provided with sanitary plumbing, constructed in a manner approved by the local board of health of the health district wherein the bathing establishment is located, and in such a way as not to contaminate the waters used by the bathers" (emphasis added).
Quite simply, petitioner contends  and the majority agrees with him  that the plain wording of the recodified statute as it relates to toilet facilities no longer exempts municipal bathing beaches that are untariffed, and that by omitting the word "such" from the first sentence of Public Health Law § 1340 (2), the Legislature intended to rescind that separate long-established exemption. I disagree.
To be sure, the general rule of construction is that a statute is to be construed according to the ordinary meaning of its words (Matter of Capital Newspapers v Whalen, 69 N.Y.2d 246, 251; Sega v State of New York, 60 N.Y.2d 183, 190-191; see also, McKinney's Cons Laws of NY, Book 1, Statutes § 111, at 225). We have also said, complementarily, that a literal interpretation of the words used will not be accorded where to do so would produce an absurd result (Doctors Council v New York City Employees' Retirement Sys., 71 N.Y.2d 669, 675; Zappone v Home Ins. Co., 55 N.Y.2d 131; Matter of Chamberlain Trust v Litke, 73 N.Y.2d 824, 826; Matter of Town of New Castle v Kaufmann, 72 N.Y.2d 684, 686 [decided today]; McKinney's *718 Cons Laws of NY, Book 1, Statutes § 111, at 233-234). Courts look to a statute as a whole so as to construe it in a manner consistent with the presumption that unreasonable results are not intended by the Legislature (see, New York Pub. Interest Research Group v Town of Islip, 71 N.Y.2d 292, 302; McKinney's Cons Laws of NY, Book 1, Statutes § 143).
We have also approached the general "plain meaning" rule from another angle when a minor change in statutory language emerges from a recodification of the entire statutory framework. In that instance, the presumption is against any substantive change in the law, absent clear expression of legislative intent to effect same. Thus, a meaning and effect contrary to the predecessor version will not be imported (Matter of Brooklyn Union Gas Co. v Commissioner of Dept. of Fin., 67 N.Y.2d 1036, 1039; see also, Schneider v Schneider, 17 N.Y.2d 123, 127; McKinney's Cons Laws of NY, Book 1, Statutes § 422).
These specific approaches to the general "plain meaning" rule make good sense and good law here. First, it is clear that title 6 of the Public Health Law was originally enacted to impose certain minimum safety and sanitary requirements on commercial, fee-generating bathing establishments. It is inexplicable that the Legislature would have intended to require noncommercial (in this case municipal) beach owners to provide and pay for the construction and maintenance of toilet facilities  a costly and onerous burden among the various statutory requirements  while continuing to exempt these same establishments from the other safety and sanitary requirements of the statute. The latter are equally salutary and important from a public health perspective and could be more easily and more inexpensively implemented. Yet, that is the effect of the majority's slavish application of the recodified Public Health Law as it pertains to sanitary facilities.
The most remarkable aspect of all is that we are asked to ascribe this critical changeover in the statute and in its policy implications with severe municipal consequences in defiance of the recodifiers' unequivocal statement that "[n]o substantive changes in the existing law were reflected in the new recodified law" (see, State Health Dept Mem, 1953 NY Legis Ann, at 202).
Finally, petitioner's view prevails that the Village has become a "bathing establishment" within the meaning of this statute because it provided lifeguard protection. That then *719 triggers the toilet facilities requirement. Apparently, all the Village has to do to unilaterally exempt itself from this newly declared Public Health Law regulatory responsibility is to discontinue or withdraw the lifeguard protection. It makes no sense to encourage this new risk to the public safety. Moreover, important legislative prerogatives should not be so unnecessarily sacrificed or facilely transferred to the unilateral disposal of the regulatee.
In my view, the trial court properly determined that there was no clear legal right to article 78 relief compelling the County and the Village to do something so dubious and arguable under the Public Health Law provision, and the petition was properly dismissed.
Order affirmed, etc.
NOTES
[1] The dissenters also rely on the drafters' "no substantive changes" declaration, as well as on the presumption that language changes resulting from recodifications do not lead to substantive changes in the absence of a clear legislative expression to the contrary (dissenting opn, at 718). However, the dissenters acknowledge that the recodification of the Public Health Law resulted in at least one substantive change, i.e., the elimination of municipalities' automatic exemption from the toilet facility requirement in Public Health Law § 1340 (2) (a) (see, dissenting opn, at 716, 717). Thus, even under the dissenters' analysis, neither the drafters' "no substantive changes" declaration nor the "presumption" on which they rely furnishes an ironclad rule.
[2] The Appellate Division's remand for a determination as to whether toilet facilities "conveniently accessible" to beachgoers could be erected was based upon a provision of the Sanitary Code that was in force at the time of its decision (10 NYCRR 6.15 [a]). In March of 1988, the provision on which the Appellate Division relied was replaced with a provision requiring the construction of toilet facilities on all bathing beaches unless such facilities are already available within 300 feet of the beach (10 NYCRR 6-1.15). Thus, in addition to determining whether toilet facilities can be built, or portable facilities installed, without running into conflict with the Federal "Dune District" rules, the court on remand will have to determine whether already existing toilet facilities within a 300-foot radius obviate the need for the Village to take action.
[3] Contrary to the dissenters' expressed concern, we do not believe that our decision in this case will prompt wholesale abandonment by municipalities of the lifeguard services they now provide. Municipal governments are, by and large, highly responsible entities, and it should not be assumed that they would willingly expose the bathers who will inevitably use their beaches to increased safety risks simply to avoid constructing toilet facilities.