Bellacosa, J.
(dissenting). Because I believe the Village’s public beaches are not and were not intended to be "bathing establishments” within the words or purview of this regulatory provision (Public Health Law § 1340), I dissent and vote to reverse the order of the Appellate Division and reinstate the judgment of the Supreme Court dismissing the petition.
The Village of Ocean Beach — part of Fire Island, Suffolk County — is a small residential community bordered on the south by the Atlantic Ocean and on the north by the Great South Bay. The Village, within the Federally protected Fire Island National Seashore (16 USC § 459e), enjoys publicly accessible open beaches for which it has furnished some lifeguard protection since 1921 at Village taxpayers’ expense. *716 No other services or facilities are provided or are available at the beaches. There are no admission fees, restrictions, or other considerations imposed for anyone to use the Village’s beaches.
Petitioner, a Village resident, seeks to compel the Suffolk County Department of Health to enforce section 1340 (2) of the Public Health Law by requiring the Village to provide toilet facilities for the use of beachgoers. Respondents in the article 78 proceeding — appellants here — moved for summary judgment asserting that the Village beach is not required to provide toilet facilities because (1) the Public Health Law expressly exempts municipal beaches from the safety and sanitary requirements; and (2) the statute is only applicable to commercial, fee-generating "bathing establishments”. I agree that the claimed municipal exemption is unavailing. However, the Village should prevail on the second ground that the toilet facilities requirement is not applicable at all to its noncommercial untariffed beaches because it is not a "bathing establishment” just because it happens to provide a lifeguard.
The sanitary and safety requirements for public "bathing establishments” are prescribed in title 6 of the State Public Health Law, enacted in its present form as part of a recodification of the entire Public Health Law (L 1953, ch 879). Prior to the recodification, the pertinent requirements were found in former Public Health Law § 312, which provided in part: "It shall be unlawful for any person to maintain, either as owner or lessee, any bathing establishment of any kind, in this state, for the accommodation of persons, for pay, or any consideration, at a point less than five hundred feet from any sewer connection * * * it shall be the duty of such owner or lessee [emphasis added] to provide separate toilet rooms * * * it shall be the duty of every person maintaining, as owner or lessee, any bathing establishment of any kind along the seashore of this state for the accommodation of persons for pay, to provide, for the safety of such bathers * * * Nothing in this section shall be construed in any way to affect any bathing establishments, in any city or municipality, or any bathing establishments or bathing beaches operated by a regional state park commission, at which there is maintained at public expense a life-saving guard” (added L 1909, ch 49, amended L 1942, ch 456 [emphasis added]).
Under this predecessor version, the Village’s beaches and bathing establishments that were untariffed enjoyed a com *717 píete and express exemption from the sanitary and safety requirements imposed on tariffed bathing establishments. In the 1953 recodification, the sanitary and safety requirements applicable to tariffed bathing establishments were relocated in three separate sections. The recast Public Health Law § 1340 (1) and its counterpart Public Health Law § 1341 continued to exempt from the sewage and safety requirements all bathing establishments that were free of charge. The "municipal exemption” was recast in section 1341 (5) to specify the exemption of municipal bathing establishments and beaches operated by the State Park Commission only as to the safety requirements of the statute.
The rearranged subdivision relating to toilet facilities, Public Health Law § 1340 (2) (a) — the key provision at issue— omitted the formerly qualifying and referencing word "such” and prescribed in pertinent part as follows:
"2. It shall be the duty of the owner, lessee or any other person maintaining any bathing establishment of any kind:
"(a) to provide separate toilet rooms, with water-closets properly provided with sanitary plumbing, constructed in a manner approved by the local board of health of the health district wherein the bathing establishment is located, and in such a way as not to contaminate the waters used by the bathers” (emphasis added).
Quite simply, petitioner contends — and the majority agrees with him — that the plain wording of the recodified statute as it relates to toilet facilities no longer exempts municipal bathing beaches that are untariffed, and that by omitting the word "such” from the first sentence of Public Health Law § 1340 (2), the Legislature intended to rescind that separate long-established exemption. I disagree.
To be sure, the general rule of construction is that a statute is to be construed according to the ordinary meaning of its words (Matter of Capital Newspapers v Whalen, 69 NY2d 246, 251; Sega v State of New York, 60 NY2d 183, 190-191; see also, McKinney’s Cons Laws of NY, Book 1, Statutes § 111, at 225). We have also said, complementarily, that a literal interpretation of the words used will not be accorded where to do so would produce an absurd result (Doctors Council v New York City Employees’ Retirement Sys., 71 NY2d 669, 675; Zappone v Home Ins. Co., 55 NY2d 131; Matter of Chamberlain Trust v Litke, 73 NY2d 824, 826; Matter of Town of New Castle v Kaufmann, 72 NY2d 684, 686 [decided today]; McKinney’s *718 Cons Laws of NY, Book 1, Statutes § 111, at 233-234). Courts look to a statute as a whole so as to construe it in a manner consistent with the presumption that unreasonable results are not intended by the Legislature (see, New York Pub. Interest Research Group v Town of Islip, 71 NY2d 292, 302; McKinney’s Cons Laws of NY, Book 1, Statutes § 143).
We have also approached the general "plain meaning” rule from another angle when a minor change in statutory language emerges from a recodification of the entire statutory framework. In that instance, the presumption is against any substantive change in the law, absent clear expression of legislative intent to effect same. Thus, a meaning and effect contrary to the predecessor version will not be imported (Matter of Brooklyn Union Gas Co. v Commissioner of Dept. of Fin., 67 NY2d 1036, 1039; see also, Schneider v Schneider, 17 NY2d 123, 127; McKinney’s Cons Laws of NY, Book 1, Statutes § 422).
These specific approaches to the general "plain meaning” rule make good sense and good law here. First, it is clear that title 6 of the Public Health Law was originally enacted to impose certain minimum safety and sanitary requirements on commercial, fee-generating bathing establishments. It is inexplicable that the Legislature would have intended to require noncommercial (in this case municipal) beach owners to provide and pay for the construction and maintenance of toilet facilities — a costly and onerous burden among the various statutory requirements — while continuing to exempt these same establishments from the other safety and sanitary requirements of the statute. The latter are equally salutary and important from a public health perspective and could be more easily and more inexpensively implemented. Yet, that is the effect of the majority’s slavish application of the recodified Public Health Law as it pertains to sanitary facilities.
The most remarkable aspect of all is that we are asked to ascribe this critical changeover in the statute and in its policy implications with severe municipal consequences in defiance of the recodifiers’ unequivocal statement that "[n]o substantive changes in the existing law were reflected in the new recodified law” (see, State Health Dept Mem, 1953 NY Legis Ann, at 202).
Finally, petitioner’s view prevails that the Village has become a "bathing establishment” within the meaning of this statute because it provided lifeguard protection. That then *719 triggers the toilet facilities requirement. Apparently, all the Village has to do to unilaterally exempt itself from this newly declared Public Health Law regulatory responsibility is to discontinue or withdraw the lifeguard protection. It makes no sense to encourage this new risk to the public safety. Moreover, important legislative prerogatives should not be so unnecessarily sacrificed or facilely transferred to the unilateral disposal of the regulatee.
In my view, the trial court properly determined that there was no clear legal right to article 78 relief compelling the County and the Village to do something so dubious and arguable under the Public Health. Law provision, and the petition was properly dismissed.
Judges Simons, Alexander and Hancock, Jr., concur with Judge Titone; Judge Bellacosa dissents and votes to reverse in a separate opinion in which Chief Judge Wachtler and Judge Kaye concur.
Order affirmed, etc.