■ In the Matter of BAYSWATER CIVIC ASSOCIATION et al., Petitioners, and ALL ROCKAWAY PLANNING COUNCIL, INC., Appellant, v NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION et al., Respondents.—In a proceeding pursuant to CPLR article 78, inter alia, to review an order, dated August 19, 1987, of the New York State Department of Environmental Conservation, made on consent, inter alia, of the City of New York, which, inter alia, permits the continued operation of the Edgemere Landfill subject to the remedial conditions and operating restrictions, the petitioner All Rockaway Planning Council, Inc., appeals from a judgment of the Supreme Court, Queens County (LeVine, J.), entered August 16, 1988, which dismissed the amended petition on the merits.

Ordered that the judgment is affirmed, without costs or disbursements.

The respondent City of New York (hereinafter the City) owns and operates the Edgemere Landfill, a municipal solid waste disposal facility located on the Rockaway peninsula in Queens. The facility is one of only two remaining landfills being operated by the City. It consists of 178 acres and receives approximately 5% of the refuse produced in New

York City, mostly from neighboring areas of Queens. Although the landfill now receives primarily nonhazardous waste, a two-acre area portion had been the site of illegal disposal of hazardous waste. Accordingly, the New York State Department of Environmental Conservation (hereinafter the DEC) designated the entire landfill as an inactive hazardous waste disposal site, which it determined needs remedial action.

To best ensure that remedial clean-up measures are undertaken, the City and the DEC entered into an agreement, the terms of which were incorporated in a "consent" order dated August 19, 1987. The order, which is at the center of this controversy, requires the City to undertake specified remedial steps pursuant to a schedule of compliance. While these remedial measures are in progress, the order permits the City to continue its disposal of nonhazardous waste throughout the noncontaminated areas of the landfill, subject to the oversight of the DEC and in accordance with governing DEC regulations (6 NYCRR part 360).

It is undisputed that the City has not yet obtained a permit from the DEC to operate the Edgemere Landfill, as required by 6 NYCRR 360-1.7 (a) (i), (ii) (former 360.2). The DEC asserts that it will not issue the necessary "part 360 permit" to the City until the City cleans up the areas within the Edgemere Landfill which have been contaminated by hazardous waste. Pursuant to the consent order, the City has until July 1, 1991, to obtain a permit, and if the City fails to do so, the Edgemere Landfill will no longer be permitted to receive any further waste for disposal.

The petitioners, who are local residents, civic groups, and politicians, argue that the DEC was without authority to enter into the instant consent order. Their argument, in essence, is that the DEC's own regulations require this solid waste management facility to have a permit and since it has none, it must be ordered closed. Thus, they contend that the DEC was without authority to consent to continuing illegal activity.

Contrary to the petitioners' contentions, we find that the DEC does have the authority to issue consent orders such as this one. The authority to enter into "stipulations and consent orders" is derived from 6 NYCRR 622.11, which, consistent with the DEC's general responsibility for the protection of the environment (ECL 3-0301), authorizes the DEC to reach agreements to abate violations of the ECL. The instant consent order achieves this end by compelling the City to clean up the portions of the Edgemere Landfill which are contaminated by

hazardous waste, while permitting continued limited refuse disposal on its remaining portions.

Moreover, similar consent orders have been upheld by the courts. In *Matter of New York Pub. Interest Research Group v Town of Islip* (71 NY2d 292), the Court of Appeals upheld a consent order pursuant to which the Town of Islip was permitted to increase the vertical height of its Blydenburgh Landfill while compelling the town to take remedial measures to clean up other portions of that landfill. In pertinent part, the court noted that the consent order challenged in that case was a matter "well within the prosecutorial discretion given the Commissioner to issue and modify orders in enforcement proceedings in connection with violations of ECL article 27" *(Matter of New York Pub. Interest Research Group v Town of Islip, supra,* at 306). Similar consent orders have also been upheld by other courts of this State *(see, Williams v Ludlow's Sand & Gravel Co.,* 122 AD2d 612; *Matter of Ludlow's Sanitary Landfill v New York State Dept. of Envtl. Conservation,* 112 AD2d 8; *Town of Ramapo v Williams,* 100 AD2d 965).

We do note that a seemingly contrary result was reached in *Town of N. Hempstead v New York State Dept. of Envtl. Conservation* (111 Misc 2d 954, *affd* 89 AD2d 1065, *without opn),* on which the petitioners primarily rely. However, that case is distinguishable on several grounds. The consent order in that case set no time limits on the operator's ability to run its hazardous waste management facility without a "part 360 permit." Thus, the consent order in that case constituted an open-ended continuation of an illegal activity, unlike the instant consent order which compels the City to upgrade to permit status by a date certain, under pain of closure. Perhaps, even more importantly, the hazardous waste management facility in *Town of N. Hempstead v New York State Dept. of Envtl. Conservation (supra,* at 956), was a private corporation which "receives and temporarily stores hazardous waste and blends some of said waste into an alternate fuel produce for sale". By contrast, the instant consent order sanctions the continued limited use of a municipal landfill which receives up to 438,000 tons of refuse every year. The consequences of annulling this consent order would be far more grave, as an already existing solid waste disposal crisis would be greatly exacerbated. Indeed, as of June 1987, 33 of the 328 landfills State-wide were operating pursuant to similar consent orders to upgrade, while only 35 were operating with "part 360 permits". The DEC is in the best position to determine the appropriate allocations and uses of this State's

waste management facilities, and, under the circumstances, we are not prepared to substitute our judgment for that of the agency charged with the responsibility therefor.

We have reviewed the appellant's remaining contentions and find them to be without merit. Thompson, J. P., Brown, Eiber and Rosenblatt, JJ., concur.