OPINION OF THE COURT
Lawrence E. Kahn, J.
This CPLR article 78 proceeding concerns the Schoharie Creek as it runs its course through Greene County in the shadow of Hunter Mountain. The Creek is a natural resource which, like all natural resources, can be put to use in many different ways. The petitioners, conservationists and anglers, presently use the Creek for fishing and recreation and seek to preserve it as a habitat for wildlife. Respondent, New York State Department of Environmental Conservation (DEC), as the steward of this natural resource, is obligated to conserve the Creek for the benefit of all inhabitants of the State. (ECL 15-0105, 15-0109.) Respondent-intervenor, Shanty Hollow Corporation (Shanty Hollow), uses the Creek as a water supply for the snow-making operations at the Hunter Mountain Ski Bowl ski resort. The competing interests of the petitioners and the intervener have brought about the instant controversy.
Shanty Hollow was issued a permit in June of 1980 by the DEC pursuant to ECL article 15. The permit was modified on July 22, 1980. That permit authorized Shanty Hollow to undertake certain work on a diversion weir that directs part of the flow of the Schoharie Creek into Dolan’s Lake, a man-made lake from which Shanty Hollow draws water for its snow-making operations. The permit, as modified, contained certain special conditions. Central to the controversy here is special condition No. 19 which limits Shanty Hollow’s right to divert water to Dolan’s Lake. That condition provided as follows:
"Boards shall be placed in the culvert box structure to control flows to Dolan’s Lake as follows:
"A. A base elevation shall be established at which no water enters Dolan’s Lake when flows in Schoharie Creek are 10 cfs or less.
"B. Boards shall be placed above the base elevation previously mentioned to allow a maximum of 2 cfs of water to enter Dolan’s Lake when flows in Schoharie Creek are 10.1 to 25 cfs and 4 cfs to enter Dolan’s Lake when flows in Schoharie Creek are 25.1 to 40 cfs.
*136 "C. There are no restrictions on additional amounts of water diverted to Dolan’s Lake when flows in Schoharie Creek are above 40 cfs.”
The 1980 permit also contained special condition No. 20 which provided that "[fluture work, including construction of a concrete wingwall and maintenance to the diversion channel will require notification, review and approval by the Department of Environmental Conservation”. Notably, the 1980 permit also bore a September 30, 1980 expiration date.
The DEC commenced an enforcement proceeding against Shanty Hollow by service of a complaint and notice of hearing on February 7, 1990 alleging that Shanty Hollow had withdrawn water from the Schoharie Creek and engaged in construction in the Creek in violation of the 1980 permit and in violation of the Environmental Conservation Law. On or about May 20, 1980, the DEC served an amended complaint further particularizing its allegations against Shanty Hollow. The amended complaint charged that Shanty Hollow "has failed to comply with special condition '19’ of the aforesaid permit from on or about September 30, 1980 to the present in violation of the permit”; that Shanty Hollow "placed and maintained greater than 55 feet of large rock in Schoharie Creek to form the wing wall extension / diversion channel for a period from on or about 1988 to the present”; that "on or about December 1, 1988, and prior to December 20, 1988” Shanty Hollow removed gravel from the bed of Schoharie Creek without a permit; and that "on or about November 22, 1989” Shanty Hollow "placed fill in the bed of the Schoharie Creek without a permit”.
This enforcement proceeding was resolved by means of a negotiated consent order between the DEC and Shanty Hollow. Before the Commissioner signed the consent order, five days of evidentiary hearings had been held in September and October 1990. The public was given notice of the Commissioner’s intent to execute the consent order and was given 30 days to file comments. The Commissioner signed the consent order on July 14, 1992. At that time the Commissioner also issued a "Statement of Findings” which summarized the provisions of the consent order and the Commissioner’s rationale for issuing the consent order.
In four causes of action, petitioners challenge the Commissioner’s determination to enter the consent order. Petitioners first contend that the consent order is unsupported by the evidence adduced at the 1990 hearing and is thus arbitrary and *137 capricious. Petitioners next contend that the consent order was made in violation of the ECL and is thus arbitrary and capricious and an abuse of discretion. Petitioners also contend that the consent order was made in violation of lawful procedure as required by the State Environmental Quality Review Act (SE-QRA) by not requiring the preparation of an Environmental Impact Statement (EIS) before permitting Shanty Hollow to make excessive water withdrawals from Schoharie Creek. Finally, petitioners contend that the consent order was made in violation of lawful procedure as required by SEQRA by allowing Shanty Hollow to construct and operate a storage impoundment without first preparing an EIS. Respondent contends that the petitioner’s cause of action directed to the storage impoundment is moot because construction is complete and otherwise contends that the Commissioner’s determination was rationally based and not arbitrary and capricious.
Shanty Hollow has been granted intervenor status in this proceeding and seeks dismissal of the petition. By cross claim Shanty Hollow seeks an order declaring that: "the DEC does not have the jurisdiction or authority to regulate water withdrawals from the Schoharie Creek for commercial and/or recreational purposes, including snowmaking; (b) In the absence of the DEC’s jurisdiction or authority to regulate water withdrawals from the Schoharie Creek, Shanty Hollow’s common law riparian rights may not be impaired by the DEC; (c) Condition 19 of the 1980 permit, insofar as it purports to regulate water withdrawal for commercial and/or recreational purposes, is illegal, null and void and beyond the regulatory authority vested in the DEC under ECL Article 15; (d) The Consent Order dated July 14, 1992 is null and void and of no force and effect.”
It is well settled that it is within the prosecutorial discretion of the Commissioner to enter into consent orders to abate violations of the Environmental Conservation Law. (Matter of New York Pub. Interest Research Group v Town of Islip, 71 NY2d 292, 306; Matter of Bayswater Civic Assn. v New York State Dept. of Envtl. Conservation, 159 AD2d 566.) In this proceeding, which seeks judicial review of the Commissioner’s determination to enter the consent order, "the court may not substitute its judgment for that of the agency responsible for making the determination, but must ascertain only whether there is a rational basis for the decision or whether it is arbitrary and capricious”. (Flacke v Onondaga Landfill Sys., 69 NY2d 355, 363.)
*138 The consent order acknowledged the DEC’s jurisdiction to regulate water withdrawals for snow making; required Shanty Hollow to prepare an EIS; required Shanty Hollow to apply for a permit under ECL article 15 for the maintenance of the diversion weir at Dolan’s Lake, with such permit to include the issue of water withdrawal for snow making. The consent order also provided that Shanty Hollow would: comply with an interim maintenance plan for the diversion weir and inlet channel to Dolan’s Lake; prepare a best management practices plan for snow making; and comply with the limits on water withdrawal for snow making.
The crux of petitioners’ first and second causes of action is their contention that, by the consent order, the DEC is permitting Shanty Hollow to withdraw a volume of water from the Schoharie Creek that is harmful to aquatic life. Thus, petitioners argue, the Commissioner’s finding that the withdrawals were "not excessive” is arbitrary and capricious and violates the provisions of the ECL. Without question, the consent order is a compromise. It is not a "best result” from the perspective of any of the parties to this proceeding. It is, however, a rational determination by the DEC.
The DEC is required to uphold the State’s policy for the Schoharie Creek as set forth by the Legislature in ECL 15-0105. This entails conserving and developing the Schoharie Creek "for all public beneficial uses”. (ECL 15-0105 [2].) This includes commercial uses, such as Shanty Hollow’s snow making as well as recreational uses such as angling. (ECL 15-0105 [3].) The "relative importance of different uses” must be given due consideration by the DEC as it carries out its mandate. (ECL 15-0105 [4].) Also, and of equal importance, the DEC must endeavor to maintain "[reasonable standards of purity and quality of the waters of the state * * * consistent with * * * the propagation and protection of fish and wildlife, including birds, mammals and other terrestrial and aquatic life”. (ECL 15-0105 [7].)
The terms of the consent order and the findings of the Commissioner reveal that the consent order is a product of the foregoing considerations albeit under the circumstances of an enforcement proceeding. In the enforcement proceeding, the DEC faced two significant hurdles. The first is the apparent September 30, 1980 expiration date of the 1980 permit which contained the water withdrawal limits in special condition No. 19. The second is the question of the DEC’s authority under the ECL to regulate the withdrawal of water by Shanty Hollow *139 from the Schoharie Creek. Instead of pursuing the enforcement proceeding to its ultimate conclusion with unknown results, the DEC rationally embarked on the course of negotiating a consent order that ensures DEC’s immediate control and supervision of both water withdrawals from the Schoharie Creek and the maintenance of the diversion weir at Dolan’s Lake. As noted above, the consent order also provides for the future protection of the resource by requiring Shanty Hollow to file an EIS as well as apply for a permit under ECL article 15. Thus, although several different arguments can be made as to what conclusion should be drawn from the evidence in the record regarding water withdrawals, the court recognizes the agency’s expertise in this technical area and finds the Commissioner’s determination to be rational, supported by the record and not in violation of the ECL. (Flacke v Onondaga Landfill Sys., 69 NY2d 355, 363, supra.) Petitioners’ first and second causes of action are thus without merit.
Petitioners’ third and fourth causes of action are also without merit as the matters set forth in the consent order, which was made in the context of an enforcement proceeding, are exempt from SEQRA review. (ECL 8-0105 [5]; 6 NYCRR 617.2 [q] [1]; Matter of New York Pub. Interest Research Group v Town of Is-lip, 71 NY2d 292, 305, supra.)
Turning to Shanty Hollow’s cross claim, it must be dismissed for failure to state a cause of action. By executing the consent order, Shanty Hollow waived any contest to the jurisdiction of the DEC over Shanty Hollow’s right to withdraw water from the Schoharie Creek as well as its right to challenge the 1980 permit. Contrary to Shanty Hollow’s contention, this proceeding does not trigger the provisions of paragraph III* of the consent order since no party has asserted the 1980 permit is applicable. Petitioners do not seek the reinstatement of the 1980 permit nor is it the basis for the relief sought — the annulment of the consent order. The petitioners’ claims turn on the Commissioner’s alleged failure to make a determination that is *140 rationally based upon the administrative record and his alleged failure to abide by the provisions of SEQRA.
Accordingly, the petition and the intervenor’s cross claim are both dismissed, without costs.
This decision shall constitute the order of the court. The clerk is directed to enter judgment accordingly. All papers, including the original copy of this decision and order, are being returned to the Attorney-General who is not relieved from the provisions of CPLR 2220 with respect to filing, entry and service.

 In relevant part, paragraph III provides as follows: "The respondent reserves its right to challenge the jurisdiction of the Department except as expressly admitted in this Order. Notwithstanding the admission of jurisdiction contained in this Order, if at any time the Department or any person shall assert the applicability of the 1980 permit or the payment of the penalty provided in Paragraph I as a basis for relief, the Respondent fully reserves its right to challenge the 1980 permit and the authority and jurisdiction of the Department to regulate, directly or indirectly, commercial water withdrawals for snowmaking purposes.”