TOWN OF ISLIP et al., Petitioners, v HENRY G. WILLIAMS, as Commissioner of the New York State Department of Environmental Conservation, et al., Respondents.

Second Department, March 23, 1987

## APPEARANCES OF COUNSEL

*Guy W. Germano, Town Attorney (Michael J. Cahill* of counsel), and *Steptoe & Johnson (Kenneth I. Jonson, Seth Goldberg* and *Marilyn Mohrman-Gillis* of counsel), for petitioners. (One brief filed.)

*Robert Abrams, Attorney-General (Ezra I. Bialik* and *Stuart Miller* of counsel), for Henry G. Williams, respondent.

*Cahn, Wishod, Wishod & Lamb (Eugene L. Wishod* and *Bruce H. Kaplan* of counsel), for Board of Education, Hauppauge Union Free School District, respondent.

*Russell F. Moran* for Caesar Trunzo and others, *amicus curiae.*

## OPINION OF THE COURT

Per Curiam.

Stated in the broadest terms, the question presented in this proceeding concerns what social and economic price is to be paid today, in order to preserve a safe physical environment for the future. The petitioners call upon us to examine the rationality of a determination made by the respondent Commissioner of the New York State Department of Environmental Conservation, which involved balancing a need to protect Long Island's water supply from contamination, against the financial burden which will be placed upon the taxpayers of the Town of Islip in order to fulfill that need. For the reasons stated below, it is not for the courts to decide what price is too high for the preservation of clean water. Other institutions are responsible for making that difficult and important determination. The Legislature must, and has, shaped the general policy of our State in this regard, and has entrusted to the Commissioner the responsibility for carrying out that policy. Since the Commissioner's determination now under review is not irrational or arbitrary, we confirm it.

This proceeding is brought in the following factual context. The Town of Islip currently disposes of its municipal solid waste at the Blydenburgh Landfill. This landfill is located above Long Island's "deep flow recharge area," that is, an area determined by the Legislature and the Commissioner to encompass certain "hydrogeologic zones" *(see,* ECL 27-0704 [1] [b]). It appears that the disposal of solid waste anywhere within this area threatens to permanently pollute the water of Long Island.

The petitioners claim that the Blydenburgh Landfill will reach capacity in March 1987, and assert that they will have two resource recovery facilities in operation in the future. They project that one such facility will be operational by March 1988, and that the other will be in operation by the end of 1990. This, of course, leaves the town authorities with the problem of finding a means by which to dispose of the municipal solid waste generated between March 1987 and the time that the two resource recovery plants have become fully functional.

In anticipation of the fact that the Blydenburgh Landfill

would eventually reach its capacity, the petitioners originally planned, in the early 1980s, to develop an additional landfill at a site in Edgewood, and, in 1982, the town acquired 80 acres of land for that purpose. However, in 1983, the Legislature enacted ECL 27-0704 (L 1983, ch 299) which prohibited the development of new landfills over the deep flow recharge area. The proposed site at Edgewood is, as is Blydenburgh, located within that area. Given the illegality of the proposed landfill at Edgewood, the town authorities proposed, as an alternative, to expand the existing landfill at Blydenburgh. Such an expansion is not peremptorily forbidden under the terms of ECL 27-0704. However, that law strictly limits the circumstances under which such an expansion may be allowed. ECL 27-0704 (3) provides: "On or after the effective date of this section and except as provided herein, no person shall commence operation, including site preparation, of a new landfill or of an expansion to an existing landfill which is located in a deep flow recharge area. However, the commissioner, after conducting a public hearing, may approve a limited expansion of any existing landfill in a deep flow recharge area for the sole purpose of providing for solid waste disposal capacity prior to the implementation of a resource recovery system. *The commissioner shall not approve any such expansion unless he finds that the owner of such landfill is a municipality that is implementing a resource recovery system which is acceptable to the commissioner and which will be operational no later than seven years after the effective date of this section and that no other feasible means of solid waste management is available, taking into account technological, economic and other essential factors*" (emphasis added).

In construing this statute, it is useful to contrast the passage from subdivision (3) which provides that the Commissioner may not approve the expansion of a landfill located over the deep flow recharge area unless, *inter alia,* "no other feasible means of solid waste management is available," with that passage from subdivision (4) (a) of the same section, which forbids the expansion of a landfill *outside* of the deep flow recharge area unless "[t]he commissioner has made an affirmative determination that such landfill [expansion] will not pose a threat to groundwater quality". By contrasting these two provisions, it becomes evident that the Legislature intended to forbid the expansion of a landfill located over the deep flow recharge area even if the Commissioner were unable to prove that such expansion would actually harm the water

supply. This, in turn, reflects a legislative finding that any landfill expansion over the deep flow recharge area should be treated as harmful per se.

The Legislature did provide, however, that an existing landfill located over the deep flow recharge area could be expanded if (1) the municipality in question is "implement-[ing] a resource recovery system * * * which will be operational no later than seven years after the effective date of this section", and (2) "no other *feasible* means of solid waste management is available, taking into account technological, economic and other essential factors" (emphasis added).

In this proceeding, a serious question has been raised by the respondent Board of Education of the Hauppauge Union Free School District as to whether the first of the criteria has been met. We need not address this issue, however, because we find that the Commissioner had an adequate basis upon which to conclude that the second criterion had not been satisfied, so that he could not legally approve the expansion of the Blyden-burgh Landfill.

The record establishes that the trucking of solid waste off Long Island is a "feasible" solid waste management program in the narrow sense of the word, i.e., "capable of being done" (Webster's Ninth New Collegiate Dictionary). The Legislature provided, however, that in determining the feasibility of alternative programs, the Commissioner is to consider "economic and other essential factors." The petitioners argue that consideration of economic factors in this case renders any program of off-island trucking infeasible. Our decision in this proceeding depends not so much on whether we agree with this argument or rather whether we, as Judges, may substitute our opinion on this question for that of the Commissioner. "In reviewing the actions of an administrative agency, this court may only annul a determination if it is not rational—if it is arbitrary and capricious or unsupported by substantial evidence (see *Matter of Pell v Board of Educ.,* 34 NY2d 222, 231)" *(Town of Hempstead v Flacke,* 82 AD2d 183, 187).

The legislative policy reflected by the enactment of ECL 27-0704 is clear. The law "mandates a phase out of landfills in the deep flow recharge zone of Long Island * * * No new landfills will be permitted in the deep flow recharge zone" (mem of State Executive Dept, 1983 McKinney's Session Laws of NY, at 2502-2503). As noted, a limited exception was created with respect to the expansion of landfills over the deep

flow recharge area, but only if there is no "feasible" alternative. Whether a given alternative proposal is feasible is a determination to be made by the Commissioner.

"[I]t is not necessary that the Legislature supply administrative officials with rigid formulas in fields where flexibility in the adaptation of the legislative policy to infinitely variable conditions constitutes the very essence of the programs" *(Matter of Nicholas v Kahn,* 47 NY2d 24, 31). "The Legislature may constitutionally delegate rule-making authority to an administrative agency only if it furnishes the agency with at least a broad outline within which to act" *(Matter of Bates v Toia,* 45 NY2d 460, 464; *see, Matter of Levine v Whalen,* 39 NY2d 510, 515-516). In the case now under review, the Legislature has provided more than a "broad outline"; it has mandated that no expansion of a landfill over the deep flow recharge area be approved unless no feasible alternative exists. In directing the Commissioner to weigh "economic and other essential factors", rather than furnishing "rigid formulas" to be applied in this case, the Legislature constitutionally delegated to the Commissioner the power to decide whether an alternative is, in fact, feasible.

Viewed from a somewhat different perspective, it appears that the Commissioner has interpreted the word "feasible" in a manner which imparts to it a meaning more restrictive than the petitioners would have liked. He determined that a program is economically "feasible" even though, taking the petitioners' figures, the cost of off-island trucking would amount to approximately $192 million over the next four years. According to one estimate, this would cost the average Islip homeowner $706 per year for the next four years. Whether such cost is acceptable, when considered in light of why such cost is necessary, may be debatable. Clearly, however, the Commissioner's determination that such cost is not so exorbitant as to render a program of off-island trucking "infeasible" is not so one-sided as to be irrational. The Commissioner's interpretation of the statute, not being irrational, should be upheld *(Matter of Bernstein v Toia,* 43 NY2d 437, 448; *Matter of Howard v Wyman,* 28 NY2d 434, 438; *Town of Hempstead v Flacke, supra).*

All parties to this dispute allude to our decision in the case of *Matter of Town of Oyster Bay v Williams* (118 AD2d 576). Our decision in that case is fully supportive of our confirmation of the determination now under review; indeed, no real distinction exists between the two cases. In the *Oyster Bay*

case, we upheld the Commissioner's refusal to permit the expansion of a landfill at Old Bethpage which was also located over the deep flow recharge area. We construed the terms of ECL 27-0704 (3) as placing the burden on the municipality to demonstrate the infeasibility of alternative programs. We found that off-island trucking, although obviously expensive, was not shown to be infeasible.

We are aware of the petitioners' argument that off-island trucking would be more expensive for Islip than for Oyster Bay, considering Islip's distance from off-island landfills, as well as the increasing scarcity of such landfills. We are also aware of the petitioners' contention that the residents of Islip are, in general, less affluent than the citizens of Oyster Bay so that the additional expense which off-island trucking would engender presents more of a burden to them. However, this court is not free to hold, based on some process of thought unguided by neutral principles, that, in order to preserve clean water, one price is acceptable, but another, higher one is not. Were we to differentiate between the plight of the Town of Islip and the similar previous plight of the Town of Oyster Bay, we would be guilty of just the sort of arbitrariness which courts have consistently condemned *(e.g., Matter of Field Delivery Serv. [Roberts],* 66 NY2d 516).

For the foregoing reasons, the determination under review should be confirmed, and the proceeding dismissed on the merits.

NIEHOFF, J. P., WEINSTEIN, RUBIN and HARWOOD, JJ., concur.

Adjudged that the determination of the respondent Commissioner of the New York State Department of Environmental Conservation, dated September 29, 1986, is confirmed and the proceeding is dismissed on the merits, without costs or disbursements.