TOWN OF EAST HAMPTON et al., Respondents-Appellants, et al., Plaintiff, v MARIO CUOMO, AS GOVERNOR OF THE STATE OF NEW YORK, ET AL., APPELLANTS-RESPONDENTS.

Second Department, May 4, 1992

338

APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Stuart Miller* and *Gregory J. Nolan* of counsel), for appellants-respondents.

*Smith, Finkelstein, Lundberg, Isler & Yakaboski (Frank A. Isler* and *Gair G. Betts* of counsel), for respondents-appellants.

### OPINION OF THE COURT

Per Curiam.

 The primary question to be answered in this appeal is whether the Long Island Landfill Law (ECL 27-0704) is unconstitutional as applied to the plaintiffs, the Towns of East Hampton, Riverhead, and Southold (hereinafter the Towns). In our view, this question must be answered in the negative.

### I

In July 1978, the Nassau-Suffolk Regional Planning Board adopted the "Long Island Comprehensive Waste Treatment Management Plan" (hereinafter the 208 Plan) in response to the requirements of Federal Clean Water Act §§ 201 and 208 (33 USC §§ 1281, 1288). Those sections of the Clean Water Act essentially required the implementation of waste treatment management plans and practices which provided for the best practicable waste treatment technology before discharge into receiving waters. Those sections also required each State to identify its water quality control problem areas and to designate an organization to develop effective areawide waste treatment management plans consistent with the above goals.

The basic thrust of the 208 Plan was that landfilling, as a means of disposing of solid waste, constituted a threat to Long Island's sole source aquifer (the only source of its drinking water), and that the practice should be eliminated entirely or minimized. The 208 Plan divided Nassau and Suffolk Counties into eight hydrogeologic zones, recognized that landfilling posed an even greater threat to Long Island's aquifer in certain of those zones than in others, and made a series of recommendations for each zone and the Nassau Suffolk area in general.

In 1983 the Legislature enacted the Long Island Landfill Law (ECL 27-0704; hereinafter the Landfill Law), effective "on the one hundred eightieth day next succeeding the date on which it shall have become a law (June 21, 1983)" (L 1983, ch 299, § 3). In enacting the Landfill Law, the Legislature made

the following findings: "The legislature hereby finds that the land burial and disposal of domestic, municipal and industrial solid waste poses a significant threat to the quality of groundwater and therefore the quality of drinking water in the counties of Nassau and Suffolk. This threat is particularly dangerous since the potable water supply for the counties is derived from a sole source aquifer. Scientific evidence and analysis have identified the incapacity of land burial and disposal to isolate leaching chemicals and gases from the surrounding environment over the long term. Resource recovery of these wastes poses minimal threats to groundwater quality" (L 1983, ch 299, § 1). Similarly, an Executive Department memorandum, prepared at the time of the statute's enactment, recognized:

"The purpose of this [law] is to phase out landfilling as a solid waste management practice and to accelerate the transition to resource recovery on Long Island. This measure is essential to protect the integrity of Long Island's sole source aquifer * * *

"Landfilling on Long Island has imperiled the integrity of its sole source aquifer. Continuation of these practices threatens to permanently pollute the drinking water supply for Long Island. Technology for resource recovery exists but implementation has proven difficult. This bill is designed to provide cut off dates beyond which landfilling will be reduced to an essential minimum" (1983 McKinney's Session Laws of NY, at 2502-2503).

The Landfill Law adopted the hydrogeologic zones of the 208 Plan (ECL 27-0704 [2]), and defined a "deep flow recharge area" as a sensitive recharge area within hydrogeologic zones I, II, and III (ECL 27-0704 [1] [b]). ECL 27-0704 (2) also provided that any changes in the boundaries of the hydrogeologic zones accepted by the Commissioner of the Department of Environmental Conservation (hereinafter the DEC) would be considered automatically adopted for purposes of the statute. The statute then provided for an interim seven-year period, i.e., until December 18, 1990, during which the commencement of a new landfill or the expansion of an existing one was prohibited unless certain conditions were satisfied. These conditions differed depending on whether or not the landfill was located in a "deep flow recharge area" (ECL 27-0704 [3], [4]).

ECL 27-0704 (5) further provided that after December 18,

1990 (L 1983, ch 299, § 3) "no person shall operate a landfill existing on the effective date of this section in the counties of Nassau and Suffolk unless", the landfill, *inter alia,* (1) had double liners with provision for leachate collection, (2) was designed to minimize the migration of methane gas, (3) did not accept hazardous industrial, commercial or institutional waste, (4) was not located in a freshwater wetland, tidal wetland or floodplain as identified by the DEC, and (5) accepted only material which was the product of resource recovery, incineration or composting. There is no dispute that the Towns' landfills do not satisfy these conditions.

## II

The Towns, which are all located on the rural, eastern end of Long Island, commenced the instant litigation against the defendants Cuomo and Jorling, the Governor and the Commissioner of the Department of Environmental Conservation (hereinafter the State), several days before the December 18, 1990, deadline.

In the complaint, the Towns set forth five separate causes of action. Initially, the Towns alleged that the 208 Plan was incorporated into, and was the underlying basis for, the Landfill Law. In their first cause of action, the Towns alleged that the 208 Plan provided for continued landfilling in the rural areas of Long Island, i.e., the area outside of Zones I, II, and III, since those areas were too remote to transport their waste economically, and the nature of waste generated by the lightly populated areas did not warrant construction of their own resource recovery facilities. The Towns further alleged that this "exception" permitting continued landfilling was readopted by the DEC in its update of the 208 Plan—the 1986 "Long Island Ground Water Management Program". Referring to certain studies by the Suffolk County Department of Health Services, the Towns asserted that the use of landfills in the rural areas did not threaten water supply in Long Island. Accordingly, the first cause of action sought a declaration that the State's application of the Landfill Law to the Towns was unconstitutional and irrational, and further sought a permanent injunction enjoining enforcement of the law.

In their second cause of action, the Towns alleged, *inter alia,* that they had developed plans to manage their solid waste streams over the next 10 years including the use of "recycling, reuse and reduction and composting". In addition,

the plans also purportedly provided for the burial of the residue of this product of "resource recovery" in "state-of-the-art lined landfills". The Towns alleged that the Landfill Law did not require municipalities to incinerate this residue, but that the DEC, through its "Regional and Hazardous Waste Engineer", had "taken the position that such residue must be incinerated prior to landfilling", thereby rendering the Towns' solid waste management plans "unacceptable". The Towns alleged that this position prevented implementation of their plans and in the second cause of action they sought a declaration that the rejection of the Towns' plans was illegal.

In their third cause of action, the Towns alleged that the DEC was obligated by law to produce a comprehensive solid waste plan for Long Island to assist municipalities in providing alternative methods of disposing of solid waste once the landfills were closed. The Towns further alleged that although this plan was considered an essential prerequisite to the closing of the landfills, the DEC did not produce this plan until August 1990, four months prior to the deadline. Additionally, the Towns alleged that the plan that was produced did not comply with SEQRA requirements in that it failed to consider the economic consequences of closing the landfills or the impact that transporting and incinerating waste would have upon air quality. Accordingly, the Towns alleged that the plan was invalid and unenforceable. Therefore, the third cause of action sought a declaration that the DEC's proposed plan and its directive that the Towns' landfills close, were invalid. The Towns also sought an injunction against the implementation of that directive.

In their fourth cause of action, the Towns alleged that the Landfill Law adopted the hydrogeologic zones and boundaries specified by the 208 Plan. The Towns further alleged that the DEC had changed the Riverhead Landfill from Zone IV, a classification which allegedly permitted the landfill to continue, to Zone III, a classification which did not permit the landfill to continue. The Towns alleged that this change was made without any notice or process and that by permitting the Commissioner of the DEC to make such changes in these classifications (ECL 27-0704 [2]), the Legislature had unconstitutionally delegated its exclusive power to make law. The fourth cause of action sought a declaration that ECL 27-0704 (2) constituted an unconstitutional delegation of legislative power.

Finally, the fifth cause of action alleged that the Landfill

Law was enacted to alleviate a perceived "imminent danger" of polluting Long Island's water supply through the leachate emanating from landfills. The Towns alleged that this threat did not exist, and that enforcement of the law would be irrational. The Towns also alleged that compliance with the law would threaten taxpayers with bankruptcy and result in a catastrophic garbage and fiscal crisis. The fifth cause of action sought a permanent injunction enjoining the State from enforcing the Landfill Law and its regulations as irrational and unconstitutional.

### III

Shortly after serving their complaint, the Towns moved for a preliminary injunction restraining the State from enforcing the Landfill Law pending the outcome of the litigation, and the State cross-moved to dismiss the complaint on the ground that it failed to state a cause of action. At that time, the DEC had not yet commenced administrative enforcement proceeding against the Towns. Both motions were denied by the Supreme Court and an appeal ensued. In affirming the Supreme Court's order denying dismissal, this court noted that CPLR article 78 review would be available to the Towns should the DEC commence administrative enforcement proceedings and order the Towns' landfills to close. This court also stated that "an expeditious trial of the merits of the constitutional issues raised by the Towns should be had" (see, Town of E. Hampton v Cuomo, 172 AD2d 657, 658).

In early May 1991 the DEC commenced administrative enforcement proceedings against the Towns asserting that the Towns were in violation of the Landfill Law. Eventually, the DEC was successful in obtaining three administrative orders mandating the closure of the Towns' landfills within 90 days.

The Towns commenced CPLR article 78 proceedings challenging those administrative orders and the Towns have been successful in obtaining stays pursuant to CPLR 7805 (see, Matter of Town of E. Hampton v Jorling, 181 AD2d 781). Those proceedings are still pending.

### IV

In our view, the State is entitled to summary judgment dismissing the complaint in its entirety.

We note that this court's affirmance of the denial of the State's motion to dismiss the complaint for failure to state a

cause of action *(see, Town of E. Hampton v Cuomo, supra),* does not preclude the subsequent granting of summary judgment to the State. In a motion to dismiss, the inquiry is whether the pleading fails to state a cause of action, whereas in a motion for summary judgment the inquiry goes to the essential merits of the case. In its prior decision, this court did not engage in the latter analysis. Accordingly, we turn to the merits of the State's motion for summary judgment.

It is well settled that every legislative enactment carries a strong presumption of constitutionality. To overcome this presumption, a party must present evidence to demonstrate beyond a reasonable doubt that there is no factual basis for the legislative determination *(see, Benson Realty Corp. v Beame,* 50 NY2d 994). Thus, it has been stated that "[i]f any state of facts, known or to be assumed, justify the law, the court's power of inquiry ends" *(see, Defiance Milk Prods. Co. v Du Mond,* 309 NY 537, 541; *New York State Socy. of Enrolled Agents v New York State Div. of Tax Appeals,* 161 AD2d 1). Similarly, it has been stated that "[s]o long as there is [a] reasonable basis in available information, and rationality in chosen courses of conduct to alleviate an accepted evil, there is no constitutional infirmity" *(see, Oriental Blvd. Co. v Heller,* 27 NY2d 212, 219; *see also, Montgomery v Daniels,* 38 NY2d 41; *Kletnieks v Brookhaven Mem. Assn.,* 53 AD2d 169, 175). It is also well recognized that courts may not substitute their judgment for that of the Legislature as to the wisdom and expediency of legislation *(see, Matter of Malpica-Orsini,* 36 NY2d 568).

None of the proof submitted or intended to be submitted by the Town requires a trial. The language of the statute is clear and unambiguous that existing landfills in the Towns cannot operate after December 18, 1990, unless certain conditions are satisfied (ECL 27-0704 [5]). The Towns do not argue that these conditions have been satisfied. It is also clear from the Legislative findings that the Legislature specifically found that landfilling on all of Long Island posed a threat to Long Island's sole source aquifer; it did not limit this threat to any specific areas of Long Island.

In essence, what the Towns seek to prove is that the Legislature's findings were incorrect. Apparently, the Towns would have this court sit as a super-legislature and review all the material that was before the Legislature and determine whether it was correct in reaching a particular conclusion. This is not a proper matter for judicial review, much less a

question for trial. The fact that landfilling poses a danger to groundwater justified the Legislature in mandating the closure of landfills on all of Long Island.

█ The Towns' constitutional argument rests on the erroneous assumption that the 208 Plan was the entire basis for the statute. It is true that the Landfill Law did expressly adopt the hydrogeologic zones and their boundaries as set forth in the 208 Plan. These boundaries were adopted for the purpose of distinguishing landfills in "deep flow recharge areas" (i.e., those within the hydrogeologic zones I, II and III) from other landfills (ECL 27-0704 [1] [b]; [2]). Since landfills outside the deep flow recharge areas were considered somewhat less dangerous to the water supply, the statute was somewhat less restrictive regarding those landfills during the interim seven-year period. For example, the statute made it easier to expand existing landfills outside the deep flow recharge areas during the interim seven-year period *(see, Town of Islip v Williams,* 126 AD2d 276, 278-280, *lv denied* 70 NY2d 602).

In any event, the law's adoption of the 208 Plan's hydrogeologic zones, does not in any way mean that the Legislature intended to adopt all of the 208 Plan's findings and recommendations. The 208 Plan was taken into consideration by the Legislature, but the 208 Plan was essentially a scientific study containing geologic data *(Town of Islip v Cuomo,* 147 AD2d 56). There is simply no expression in the Landfill Law or in the Legislature's findings that all of the 208 Plan's findings and recommendations were being adopted. The Legislature, no doubt, had other scientific evidence and material before it when it adopted the Landfill Law, and given the unambiguous language of the statute, it is clear that the Legislature did not intend to adopt the 208 Plan in toto. Even if the 208 Plan were the only source of information before the Legislature, the Legislature, given the potential dangers, could have gone beyond its conclusions and recommendations to insure safety of the water supply. In *Matter of Long Is. Pine Barrens Socy. v Planning Bd.* (178 AD2d 18), this court recognized the scope of those potential dangers, when it noted that once the groundwater becomes contaminated, it may take hundreds of years for the natural processes to cleanse the aquifer. It must also be stressed that the 208 Plan clearly indicates that while landfilling may pose greater dangers to the groundwater in certain zones, the practice nevertheless should be eliminated or restricted throughout Long Island. The Legislature adopted that approach by mandating the closure of the Towns' land-

fills after December 18, 1990, unless certain conditions were met. Therefore, the first and fifth causes of action must be dismissed.

■ With respect to the third cause of action, the record indicates that the DEC issued a "Proposed Solid Waste Management Strategy for Long Island" (hereinafter the Strategy) in August 1990. The Strategy clearly indicates that its recommendations were not intended to be mandatory on local governments. However, even if the DEC failed to meet its obligation to facilitate solid waste management policy, the Towns' obligation to close their landfills was not affected. There is no language in the Landfill Law indicating that the DEC's failure to meet its obligations vitiates the Towns' obligation to close the existing landfills. Moreover, since the recommendations in the Strategy are permissive, there is also no basis for the Towns' claim of a SEQRA violation (see, 6 NYCRR 617.2 [b] [2]; *Matter of Schiff v Board of Estimate,* 122 AD2d 57, 60). The permissive nature of the Strategy also vitiates any claim that the Strategy should be declared invalid. The Towns may still follow their own waste management programs, as long as they comply with the Landfill Law and any appropriate regulations.

■ With respect to the fourth cause of action, we find that the Towns failed to submit probative evidence that the Commissioner ever changed the boundaries. The Town of Riverhead Supervisor, Joseph Janoski, alleged in his affidavit that the DEC changed the classification of the Town of Riverhead from Zone IV, which it was classified under in the 208 Plan, to Zone III. However, the only support for this allegation is (1) the fact that the DEC rejected landfilling by the Town of Riverhead, and (2) Janoski's assumption that landfilling was prohibited in Zone III and permitted in Zone IV. However, the latter assumption by Janoski is a false one. After December 18, 1990, the Landfill Law prohibits the operation of landfills in Zone IV (as well in Zones V through VIII) which fail to meet certain conditions, and there is no dispute that the Towns' landfills, including that of the Town of Riverhead, do not satisfy these conditions.

Even if Janoski's affidavit did raise an issue of fact as to whether the Town of Riverhead zone had been changed, summary judgment in favor of the State on this cause of action would still be warranted. An administrative agency possesses all the powers expressly delegated to it by the Legislature and such delegation of authority will be upheld so

long as the Legislature has limited the field in which that discretion is to operate and provides standards to govern its exercise. In addition, it is not always necessary that the Legislature provide precise guidelines to an administrative agency. The Legislature need only furnish an agency standards or guides in so detailed a fashion as is reasonably practicable in the light of the complexities of the particular area to be regulated *(see, Matter of Consolidated Edison Co. v Department of Envtl. Conservation,* 71 NY2d 186; *Town of Islip v Williams,* 126 AD2d 276, *supra).*

Although ECL 27-0704 (2) does not explicitly indicate the basis upon which the Commissioner can change the boundaries of the zones, the statute clearly was intended " 'to protect the integrity of Long Island's sole source aquifer' " *(Matter of Town of Islip v Cuomo,* 64 NY2d 50, 53). This standard is adequate to govern a decision by the Commissioner to change the boundaries of the hydrogeologic zones.

▮ Finally, the defendants, in their present motion for summary judgment, have specifically moved to dismiss the second cause of action which essentially alleges that the DEC is acting irrationally in requiring the Towns to incinerate the residue of resource recovery. However, the record indicates that no final determination on this issue has yet been made by the Commissioner of the DEC, and thus no justiciable controversy has been presented *(Town of Islip v Cuomo,* 147 AD2d 56, *supra).* The Towns will have the opportunity, in an appropriate CPLR article 78 proceeding, to review any final determination by the Commissioner in this regard, and if necessary, to compel the Commissioner to act upon their plans.

## V

In light of our determination, there is no need to address the arguments raised on the separate appeal and cross appeal concerning the State's motion to quash a subpoena served on the Commissioner of DEC. Accordingly, that appeal and the cross appeal are dismissed as academic.

MANGANO, P. J., THOMPSON, BRACKEN, SULLIVAN and HARWOOD, JJ., concur.

Ordered that the appeal and cross appeal from the order entered March 11, 1992, are dismissed, without costs or disbursements, as academic in light of our disposition of the appeal from the order entered March 18, 1992; and it is further,

Ordered that the order entered March 18, 1992, is reversed, on the law, without costs or disbursements, the defendants' motion for summary judgment is granted, it is declared that the Long Island Landfill Law (ECL 27-0704) is constitutional as applied to the plaintiffs, and the complaint is otherwise dismissed.