## State of New York
## Supreme Court, Appellate Division
## Third Judicial Department

Decided and Entered:  October 20, 2016               522187
_____

In the Matter of FMC
    CORPORATION,
                    Appellant,

        v
                                        MEMORANDUM AND ORDER
NEW YORK STATE DEPARTMENT OF
    ENVIRONMENTAL CONSERVATION,
                    Respondent.
_____

Calendar Date:  September 12, 2016

Before:  Egan Jr., J.P., Lynch, Devine, Clark and Mulvey, JJ.

_____

        Hodgson Russ, LLP, Buffalo (David G. Mandelbaum of
Greenberg Traurig, LLP, Philadelphia, Pennsylvania, admitted
pro hac vice), for appellant.

        Eric T. Schneiderman, Attorney General, Albany (Maureen F.
Leary of counsel), for respondent.

_____

Lynch, J.

        Appeal from a judgment of the Supreme Court (Elliot III,
J.), entered August 24, 2015 in Albany County, which, in a
proceeding pursuant to CPLR article 78, granted respondent's
motion to dismiss the petition.

        Petitioner is the owner and operator of a 103-acre facility
that produced organic and inorganic pesticides, fungicides,
herbicides and insecticides for more than 60 years in the Village
of Middleport, Niagara County.  Due to the manufacturing process
and because petitioner dumped and stored chemical waste on its
property, the soil, groundwater and surface water on and near the

facility became contaminated with myriad chemicals, including arsenic and lead. In 1980, petitioner submitted a hazardous waste permit application to the Environmental Protection Agency (hereinafter EPA) pursuant to the federal Resource Conservation and Recovery Act (see 42 USC § 6901 et seq. [hereinafter RCRA]). That same year, petitioner's facility was added to New York's registry of hazardous waste disposal sites (see ECL 27-1305 [1]). In 1985, the facility shifted from manufacturing to only formulating pesticides (i.e., mixing and packaging) and continues to operate in that capacity. After a revised permit application was submitted to the EPA and respondent, respondent classified a portion of the facility as having a "[s]ignificant threat to the public health or environment" (ECL 27-1305 [2] [b] [2]; see 6 NYCRR former 375-1.4 [c]; 6 NYCRR 375-2.7 [a] [4]). In 1987 and 1990, petitioner and respondent executed separate administrative orders on consent requiring certain remedial and investigative action under the State Superfund program (see ECL art 27, tit 13).

In 1991, petitioner, respondent and the EPA executed an administrative order on consent (hereinafter the consent order) that required petitioner to complete an RCRA facility investigation to determine the nature and extent of the contamination. During the investigative process, respondent and the EPA divided the affected on and off-site property into 11 separate operable units (hereinafter OUs) and directed petitioner to complete certain interim corrective and remedial measures to address contamination in areas requiring more immediate attention. This proceeding involves OUs 2, 4 and 5 comprising some 500 acres of off-site residential, commercial and school properties. In 2009, respondent and the EPA approved petitioner's draft investigation report in accordance with the consent order, and directed petitioner to perform a corrective measure study (hereinafter CMS) to develop and recommend ways to remediate the contamination. In June 2010, petitioner submitted its draft CMS report, which proposed eight remedial plans, known as corrective measure alternatives (hereinafter CMAs).

In June 2012, respondent issued a draft statement of basis designed "to inform the public and seek its participation in the selection of a remedy" to address the contamination in OUs 2, 4

and 5.  Therein, respondent proposed CMA 9, a remedy that incorporated elements of two of petitioner's CMAs, but exceeded same by mandating that the arsenic level in the soil in each affected property not exceed 20 parts per million.  In August 2012, petitioner submitted its written response challenging the selection of CMA 9.  By letter dated October 19, 2012, respondent and the EPA advised petitioner that its CMS report with regard to OUs 2, 4 and 5 was accepted as final and that the consent order was "deemed by the [a]gencies to be closed."  By correspondence dated October 25, 2012, petitioner responded that the consent order could not be "closed" because a final CMA had not been selected by the EPA.  After a public comment period, respondent issued the final statement of basis wherein it formally selected CMA 9 on May 28, 2013.  The parties entered into a series of tolling agreements extending the time in which to challenge this selection through April 30, 2014.  On May 1, 2014, petitioner submitted a "Notice of Dispute and Request for Resolution" pursuant to the consent order.[1]  By correspondence dated May 7, 2014, respondent, through counsel, advised that, in light of petitioner's "refusal" to implement CMA 9, respondent planned to complete the work at petitioner's expense.

Petitioner commenced this CPLR article 78 proceeding on May 30, 2014, asserting four causes of action.  In the first three causes of action, petitioner alleges that respondent issued the statement of basis and proceeded with remedial work in excess of its authority under the Environmental Conservation Law, respondent's regulations and the consent order, in contravention of the EPA's authority under the RCRA and the consent order.  By the fourth cause of action, petitioner alleges that respondent's selection of CMA 9 was affected by an error of law, was arbitrary and capricious and an abuse of discretion because it was made in violation of the consent order and the Environmental Conservation Law.  Respondent moved to dismiss the petition as time-barred and

---

[1]  By correspondence dated May 22, 2014, the EPA rejected petitioner's attempt to challenge the statement of basis pursuant to the dispute resolution procedures set forth in the consent order, contending, at least in part, that the consent order had been "closed" in October 2012.

then answered.  Supreme Court dismissed the petition as time-barred after finding that petitioner's claims accrued in October 2012.  Petitioner now appeals.

A proceeding pursuant to CPLR article 78 must be commenced "within four months after the determination to be reviewed becomes final and binding upon the petitioner" (CPLR 217 [1]; see Matter of Best Payphones, Inc. v Department of Info. Tech. & Telecom. of City of N.Y., 5 NY3d 30, 34 [2005]).  A determination is "final and binding" where, after a "pragmatic evaluation" of the context (Matter of Essex County v Zagata, 91 NY2d 447, 453 [1998] [internal quotation marks and citation omitted]), it can be said that the agency "reached a definitive position on the issue that inflicts actual, concrete injury and . . . the injury inflicted may not be prevented or significantly ameliorated by further administrative action or by steps available to the complaining party" (Matter of Best Payphones, Inc. v Department of Info. Tech. & Telecom. of City of N.Y., 5 NY3d at 34; Stop-The-Barge v Cahill, 1 NY3d 218, 223 [2003]; see Matter of Essex County v Zagata, 91 NY2d at 453).  "That a particular agency action is merely a step in the agency's decision-making process does not render that action nonfinal for purposes of review under CPLR article 78" (Matter of Riverkeeper, Inc. v Crotty, 28 AD3d 957, 960 [2006]; see Matter of Demers v New York State Dept. of Envtl. Conservation, 3 AD3d 744, 746 [2004]).

This dispute centers on respondent's selection of CMA 9 as the appropriate remedy to remediate the site and its determination to implement that remedy at petitioner's expense.  As a threshold matter, we conclude that Supreme Court erred in dismissing the proceeding as untimely.  In doing so, the court erroneously focused on the October 19, 2012 correspondence from the EPA and respondent advising petitioner that the consent order was closed.  The court treated this letter as a final determination for purposes of triggering the statute of limitations.  The flaw in that analysis is that both the EPA and respondent maintained that remedy selection and implementation

were not included in the consent order.[2]  In other words, respondent contends that the consent order delineated only petitioner's obligation to complete both the facility investigation and CMS — which the October 19 letter confirmed that petitioner had completed to the satisfaction of both agencies.  That being the case, respondent maintains that the dispute resolution procedures set forth in the consent order no longer applied and, thus, petitioner was required to actually commence a CPLR article 78 proceeding within four months, i.e., by February 19, 2013.

Respondent's argument overlooks the fact that an actual remedy had yet to be selected by October 19, 2012.  By its terms, the October 19 letter makes no reference to the selection of a remedy, notwithstanding the fact that the draft statement of basis selecting CMA 9 had been issued in June 2012.  The actual selection of a remedy did not occur until respondent issued its final statement of basis in May 2013.  At that point, there is no

---

[2]  We are mindful that the consent order provides for the performance of the CMS in accord with attachment II, incorporated by reference into the consent order.  By its terms, task X in attachment II specifies that, after petitioner recommends a CMA, the "EPA will select the [CMA] or [CMAs] to be implemented" and defines the criteria to be utlized in making the selection. Petitioner relies upon this language to sustain its position that remedy selection was embraced in the consent order and that it was entitled to follow the dispute resolution procedures in the consent order to challenge respondent's selection of CMA 9.  In contrast, the EPA and respondent maintain that the quoted phrase was "merely descriptive of the remedial process" beyond the consent order, such that the consent order's dispute resolution procedures do not apply to the remedy selection.  If that were the case, then it is incongruent for respondent to maintain that the October 19, 2012 letter closing the consent order triggered the statute of limitations to challenge the selection of CMA 9. We need not resolve this impasse between the parties, for even accepting respondent's premise that remedy selection was not part of the consent order, the selection did not occur until the final statement of basis was issued in May 2013.

dispute that the parties entered into the tolling agreements in an effort to negotiate a resolution. As petitioner initiated this proceeding on May 30, 2014, the proceeding is timely. Because issue has been joined and the record is fully developed, we exercise our discretion to consider the substantive claims in the petition in the interest of judicial economy (see Matter of Williams v Travis, 20 AD3d 622, 623 [2005]).

This proceeding involves federal and state statutes and regulations governing hazardous waste treatment, storage and disposal. The RCRA, administered by the EPA, primarily governs the treatment, storage and disposal of hazardous waste "so as to minimize the present and future threat to human health and the environment" (42 USC § 6902 [b]; see Meghrig v KFC Western, Inc., 516 US 479, 483 [1996]); Matter of Thompson Corners, LLC v New York State Dept. of Envtl. Conservation, 119 AD3d 81, 84 [2014], lv denied 24 NY3d 910 [2014]). In 1986, the EPA authorized New York to implement its own hazardous waste program pursuant to the RCRA (see 42 USC § 6926 [b]; ECL 27-0900 et seq.), thus allowing the state to "operate in lieu of the Federal [hazardous waste] program" (51 Fed Reg 17739 [1986]; see Matter of Thompson Corners, LLC v New York State Dept. of Envtl. Conservation, 119 AD3d at 85). New York's waste management program is set forth in ECL article 27, title 9 and is "consistent with [RCRA] standards" (ECL 27-0911 [1]; see Matter of Thompson Corners, LLC v New York State Dept. of Envtl. Conservation, 119 AD3d at 85). ECL article 27, title 13, which governs cleanup of inactive hazardous waste disposal sites (see ECL 27-1301 et seq.), obligates respondent to "implement[ ] a remedial program in the event the responsible party was unknown, unable or unwilling to ameliorate the situation" (Matter of New York State Superfund Coalition, Inc. v New York State Dept. of Envtl. Conservation, 18 NY3d 289, 292-293 [2011]). The consent order was negotiated and issued after the EPA issued a unilateral "Initial Administrative Order" pursuant to the RCRA and the New York statute authorizing respondent to enforce ECL article 27 (see ECL 71-2727 [3]; Matter of New York Pub. Interest Research Group v Town of Islip, 71 NY2d 292, 306 [1988]).

Petitioner now alleges that respondent was without authority to issue the final statement of basis in May 2013 and

further challenges respondent's May 7, 2014 determination to implement CMA 9 at petitioner's expense, while rescinding its "interim decisions" with regard to corrective work performed on school district property. The gravamen of petitioner's claims is that respondent's unilateral selection of CMA 9 as the remedial plan and decision to use the hazardous waste remedial fund to pay for the remediation was arbitrary and capricious.

Initially, we find that petitioner was properly subjected to the provisions of ECL article 27, titles 9 and 13. Title 13 became applicable when petitioner's property was added to the registry of inactive hazardous waste disposal sites in 1980 due to its storage of certain hazardous byproducts from the manufacturing process on the premises (see ECL 27-1303). In 1986, the property was reclassified as a "[s]ignificant threat to the public health or environment – action required" (ECL 27-1305 [2] [b] [2]). At the same time, due to its status as an operator and generator of hazardous waste (see 6 NYCRR 370.2; 40 CFR 260.10), petitioner submitted a hazardous waste permit in accordance with the state's equivalent of the RCRA statute (see ECL 27-0913). Consequently, we find that respondent was authorized to assert its authority pursuant to titles 9 and 13 and to issue the statement of basis as part of the permitting process (see Matter of Occidental Chem. Corp. v New York State Dept. of Envtl. Conservation, 114 AD2d 233, 238 [1986]). By its terms, the statement of basis document (see 6 NYCRR 373-1.4 [e]) was the "the final corrective measure for [OUs 2, 4 and 5]" pursuant to the state's equivalent of the RCRA permitting statutes and regulations and also the "Record of Decision" for purposes of selecting a remedial plan for these OUs under title 13 (see ECL 27-0913 [1] [a]; 6 NYCRR 373-1.4 [e]; 375-2.8 [e]). The document described CMA 9 to include the excavation and removal of soil within the affected area to achieve the "arsenic remedial goal of 20 parts per million with some flexibility to be employed by [respondent] on a case-specific basis," in part, "to accommodate property owner concerns."

Petitioner also contends that respondent did not have any authority to choose CMA 9 under either the state's equivalent to the RCRA provisions or the provisions applicable to inactive hazardous waste sites. As explained within the document, the

statement of basis was "a hybrid administrative decision under two complementary [s]tate statutory programs." Under both of the statutory programs, respondent has the authority to undertake remedial work. For example, respondent may "clean up or return to its original state any area where hazardous wastes were disposed, possessed or dealt in unlawfully" (ECL 27-0916) and such remedial work is paid from the hazardous waste remedial fund (see ECL 27-0916 [5]; State Finance Law § 97-b). Respondent may also direct certain corrective action as a condition of a permit (see ECL 27-0911; Matter of Thompson Corners, LLC v New York State Dept. of Envtl. Conservation, 119 AD3d at 87-88). Further, respondent may require remediation of an inactive hazardous waste site, where, as here, the site is deemed to be a "significant threat to the environment" (ECL 27-1313 [3] [a]).

While conceding that petitioner's facility is regulated under both title 9 and title 13 of ECL article 27, respondent maintains that it was authorized to select CMA 9 and proceed with the remedial work pursuant to ECL 27-0916 (1) on the premise that petitioner "unlawfully" dealt with hazardous waste. Under that provision, respondent's authority to act exists where the hazardous waste is managed "unlawfully in violation of [ECL] 27-0914," i.e., without authorization (ECL 27-0916 [1]; see ECL 27-0914). But here, respondent explained in the statement of basis that petitioner "does not presently have an operating permit but is subject to what are called 'iterim status' requirements." Thus, it appears that, at all relevant times, petitioner was operating lawfully pursuant to its "interim status" (6 NYCRR 373-1.3).

Given the hybrid nature of the statement of basis, and the fact that petitioner was operating on an "interim status" basis, we conclude that the procedural framework set forth in ECL 27-1313 applies (see Matter of New York State Superfund Coalition, Inc. v New York State Dept. of Envtl. Conservation, 18 NY3d at 296-297). Where, as here, respondent has determined that a site poses a "significant threat to the environment," the agency may order an owner "(i) to develop an inactive hazardous waste disposal site remedial program, subject to the approval of [respondent], at such site, and (ii) to implement such program within reasonable time limits specified in the order" (ECL 27-

1313 [3] [a]).  Prior to issuing such an order, the owner is entitled to "notice and the opportunity for a hearing" (ECL 27-1313 [4]).  Where a responsible party "has failed" to comply with a remedial order, either because it is unable or unwilling to do so, respondent may implement the remedial program itself (ECL 27-1313 [5] [a], [b], [c]).

Here, under the consent order, petitioner developed the CMA report.  The focus in this proceeding turns to remedy selection and implementation.  Under this statutory framework, petitioner was entitled to both notice (which was provided through the statement of basis process) and an opportunity for a hearing prior to the issuance of an order directing petitioner to implement CMA 9.  As it turns out, petitioner was not accorded an opportunity for a hearing to assert its challenge to CMA 9 and no implementation order was issued.  Absent such an order, we must agree with petitioner that respondent's determination that it was authorized to proceed with the remedial work based on petitioner's "refusal" to perform the work was arbitrary and capricious.  In light of our determination, it is not necessary to consider petitioner's remaining contentions.

Egan Jr., J.P., Devine, Clark and Mulvey, JJ., concur.

ORDERED that the judgment is reversed, on the law, without costs, motion denied, petition granted and matter remitted to respondent for further proceedings not inconsistent with this Court's decision.

ENTER:

Robert D. Mayberger
Clerk of the Court