Matter of 101CO, LLC v New York State Dept. of Envtl. Conservation (2019 NY Slip Op 01472)





Matter of 101CO, LLC v New York State Dept. of Envtl. Conservation


2019 NY Slip Op 01472


Decided on February 28, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 28, 2019

526777

[*1]In the Matter of 101CO, LLC, et al., Appellants,
v
NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION et al., Respondents.

Calendar Date: January 8, 2019

Before: Lynch, J.P., Mulvey, Devine, Aarons and Pritzker, JJ.


Tooher & Barone, LLP, Albany (Meave M. Tooher of counsel), for appellants.
Letitia James, Attorney General, Albany (Frederick A. Brodie of counsel), for Department of Environmental Conservation, respondent.
Matthews, Kirst & Cooley PLLC, East Hampton (Brian E. Matthews of counsel), for Sand Land Corporation and another, respondents.



MEMORANDUM AND ORDER
Pritzker, J.
Appeal from a judgment of the Supreme Court (Ferreira, J.), entered February 2, 2018 in Albany County, which, among other things, in a combined proceeding pursuant to CPLR article 78 and action pursuant to ECL 71-1311 (2), granted respondents' motions to dismiss the petition/complaint.
Respondents Sand Land Corporation and Wainscott Sand and Gravel Corporation (hereinafter collectively referred to as Sand Land) operate a 50-acre sand and gravel mine in the hamlet of Bridgehampton, Suffolk County (hereinafter the mine) that has been active at this location for nearly 60 years. Petitioners are landowners that neighbor the mine. Petitioners and Sand Land have a history of acrimony relating to alleged environmental issues caused by the mine and the alleged failure of respondent Department of Environmental Conservation (hereinafter DEC) to properly enforce its regulations. Upon becoming aware of respondents' negotiations following two notices of violations issued in May 2015 and May 2016, petitioners sought and were denied inclusion in the negotiation process. On November 10, 2016, respondents ultimately negotiated an order on consent (hereinafter the consent order) resolving the enforcement action against Sand Land. This consent order required Sand Land to submit, for [*2]DEC approval, a remediation plan addressing eight specific items. Petitioners were notified, by email, that the remediation plan had been approved on November 17, 2016.[FN1]
Petitioners filed a Freedom of Information Law (see Public Officers Law art 6 [hereinafter FOIL]) request in November 2016 seeking copies and drafts of the consent order and remediation plan, along with related correspondence, which was immediately acknowledged by DEC. By January 2017, DEC produced "[a]ll records identified as responsive" to petitioners' FOIL request, including the consent order and remediation plan, with the exception of some redacted material and privileged documents, which petitioners appealed.
On March 17, 2017, petitioners commenced this combined CPLR article 78 proceeding and action pursuant to ECL 71-1311 (2) seeking, in relevant part, review of DEC's approval of the remediation plan and a determination regarding the partial denial of petitioners' FOIL request. Following commencement of this action/proceeding, DEC produced additional documents pursuant to petitioners' FOIL request. Following pre-answer motions to dismiss by respondents, Supreme Court, as relevant here, dismissed petitioners' first three causes of action, all of which sought nullification of the remediation plan based upon its alleged insufficiencies, holding that the November 10, 2016 consent order was the relevant final determination of the agency and, therefore, these claims were untimely. The court alternatively found that because the remediation plan was nearly fully implemented by the time of the filing of the petition/complaint, the first three causes of action were barred by the doctrines of laches and mootness. Finally, regarding the FOIL request, the court found that, as DEC had subsequently released the settlement negotiation documents and petitioners had not continued to contest the documents withheld, the claim was moot and that petitioners had not "substantially prevailed" for the purposes of counsel fees and costs. Petitioners appeal.
Turning first to Supreme Court's dismissal of the first three causes of action based upon statute of limitations, the question turns on whether accrual is the November 10, 2016 date of the consent order or the later November 17, 2016 approval of the remediation plan. "The statute of limitations for a challenge to a governmental determination begins to run when the determination to be reviewed becomes final and binding upon the petitioner, which occurs when the petitioner has been aggrieved because the determination has an impact upon that party" (Matter of Adirondack Med. Center-Uihlein v Daines, 119 AD3d 1175, 1177 [2014] [internal quotation marks and citations omitted]; see Matter of Edmead v McGuire, 67 NY2d 714, 716 [1986]). An administrative agency "bear[s] the burden of establishing [its] statute of limitations defense" (Matter of Bronx-Lebanon Hosp. Ctr. v Daines, 101 AD3d 1431, 1432 [2012]).
Here, petitioners are specifically challenging the remediation plan, rather than the consent order. Also, DEC, in the consent order, reserved the right to approve or disapprove the submitted plan and, further, did in fact exercise that right in its approval by requiring modifications based upon its concerns. Thus, inasmuch as the purpose of the remediation plan was to particularly set forth the specific actions that Sand Land was to take to address its violations — none of which was detailed in the consent order — any harm to petitioners would be "merely speculative" until such time as the remediation plan was approved by DEC (Matter of Troy Sand & Gravel Co., Inc. v Town of Nassau, 125 AD3d 1188, 1190 [2015]; see Matter of Adirondack Council, Inc. v Adirondack Park Agency, 92 AD3d 188, 191 [2012]). Therefore, it was proper for petitioners to rely on the approval of the remediation plan for accrual of their claims because a challenge to the consent order itself would not have been ripe for judicial review (see Matter of Adirondack Wild: Friends of the Forest Preserve v New York State Adirondack Park Agency, 161 AD3d 169, 173 [2018]; Matter of Adirondack Council, Inc. v Adirondack Park Agency, 92 AD3d at 190). Accordingly, Supreme Court erred in finding that the November 10, 2016 consent order was the final and binding determination that triggered the [*3]four-month statute of limitations, rendering petitioners' claims untimely, because the details of the remediation plan were necessary for the matter to be justiciable (see Matter of FMC Corp. v New York State Dept. of Envtl. Conservation, 143 AD3d 1128, 1130-1131 [2016], revd on other grounds 31 NY3d 332 [2018]; Matter of Adirondack Council, Inc. v Adirondack Park Agency, 92 AD3d at 190—192; Matter of Chapin Home for Aging v Novello, 66 AD3d 1288, 1289 [2009]).
We find that Supreme Court also erred in alternatively dismissing petitioners' first three causes of action based upon laches and mootness. To the extent that these fact-based affirmative defenses can be raised in a motion to dismiss challenging the sufficiency of the pleadings, we find them lacking in merit (see generally Radiation Oncology Servs. of Cent. N.Y., P.C. v Our Lady of Lourdes Mem. Hosp., Inc., 148 AD3d 1418, 1420 [2017]; Demas v Levitsky, 291 AD2d 653, 661-662 [2002], lv dismissed 98 NY2d 728 [2002]). Laches is defined as "an equitable bar, based on a lengthy neglect or omission to assert a right and the resulting prejudice to an adverse party" (Saratoga County Chamber of Commerce v Pataki, 100 NY2d 801, 816 [2003], cert denied 540 US 1017 [2003]; see City of Schenectady v Edison Exploratorium, Inc., 147 AD3d 1264, 1267 [2017]). A party asserting the laches defense must "establish [his or her] lack of knowledge that [the petitioner] would assert claims . . . and an unconscionable delay on [the petitioner's] part that induced [the respondent] to act or refrain from acting in ways that would prejudice [the respondent] if [the petitioner was] now permitted to assert such claims" (Sparkling Waters Lakefront Assn, Inc. v Shaw, 42 AD3d 801, 803 [2007]; see Matter of Letourneau v Town of Berne, 89 AD3d 1202, 1203 [2011]). Further, "the doctrine of mootness is invoked where a change in circumstances prevents a court from rendering a decision that would effectively determine an actual controversy" (Matter of Dreikausen v Zoning Bd. of Appeals of City of Long Beach, 98 NY2d 165, 172 [2002]; see Matter of Kowalczyk v Town of Amsterdam Zoning Bd. of Appeals, 95 AD3d 1475, 1477-1478 [2012]).
On the record before us, we fail to see how respondents can claim lack of awareness that petitioners would seek to assert claims alleging issues with regard to the consent order or remediation plan (see Matter of Letourneau v Town of Berne, 89 AD3d at 1203; Turner v Caesar, 291 AD2d 650, 652 [2002]). First, petitioners have been asserting claims against Sand Land since 2013, including parallel litigation pending against it relating to petitioners' claims of trespass, nuisance, unjust enrichment and negligence, as well as another action commenced by Suffolk County. Further, DEC was acutely aware of petitioners' interest in protecting their claims, as petitioners repeatedly complained to DEC, sought to be involved with negotiations and sought all documentation on how the enforcement action was being carried out. Also, Sand Land was aware of petitioners' continued interest, noting, in an affidavit by Sand Land's president — John Tintle — in support of its motion to dismiss that petitioners were constantly surveilling the mine. Further, petitioners were not shown to have unreasonably delayed litigation prejudicing Sand Land, as petitioners were not given the remediation plan until December 1, 2016 and were not told it was approved until December 8, 2016. As set forth in the Tintle affidavit, as of mid-December, not only had Sand Land already completed a significant amount of the remediation work, but Sand Land also stopped all work for the season within weeks of petitioners being notified that the plan was approved. Accordingly, we find that petitioners' delay in commencing this action/proceeding was neither prejudicial nor so unreasonable as to warrant equitable relief (see generally Turner v Caesar, 291 AD2d at 652; compare Matter of Clarke v Town of Sand Lake Zoning Bd. of Appeals, 52 AD3d 997, 999-1000 [2008], lv denied 11 NY3d 707 [2008]; Delameter v Rybaltowski, 161 AD2d 1001, 1002 [1990]).
Supreme Court, in dismissing the first three causes of action based upon mootness, relied upon Sand Land's completion of the remediation plan. For the same reasons that we find the affirmative defense of laches to be unavailable, namely, respondents' awareness of petitioners' interest in asserting claims alleging issues with the consent order and/or remediation plan, we find that Sand Land's "completion was undertaken at [its] own risk" and, therefore, the doctrine of mootness does not apply (Town of N. Elba v Grimditch, 131 AD3d 150, 157 [2015], lv denied 26 NY3d 903 [2015]). We also note that, because petitioners' first three causes of action are based upon certain alleged insufficiencies in the remediation plan, the fact that Sand Land's work [*4]was nearly complete would not impact an ultimate determination as to whether the plan was sufficient.
Lastly, we reach petitioners' assertion that Supreme Court erred in denying their request for counsel fees as they "substantially prevailed" in their FOIL request. Under Public Officers Law § 89 (4) (c) (i), "[w]here, as here, an agency fails to respond to a FOIL . . . appeal within the statutory time, the court may award counsel fees and other litigation costs to a litigant who substantially prevails in a CPLR article 78 proceeding brought to review the constructive denial of the [appeal]" (Matter of Legal Aid Socy. v New York State Dept. of Corr. & Community Supervision, 105 AD3d 1120, 1121 [2013] [internal quotation marks, brackets and citation omitted]; see Matter of New York Civ. Liberties Union v City of Saratoga Springs, 87 AD3d 336, 337-338 [2011]). A petitioner substantially prevails under Public Officers Law § 89 (4) (c) when it "'receive[s] all the information that it requested and to which it was entitled in response to the underlying FOIL litigation'" (Matter of Legal Aid Socy. v New York State Dept. of Corr. & Community Supervision, 105 AD3d at 1121-1122, quoting Matter of New York State Defenders Assn. v New York State Police, 87 AD3d 193, 196 [2011]).
Here, DEC produced "[a]ll records identified as responsive" to petitioners' FOIL request, with the exception of records that were redacted because DEC claimed that they consisted of attorney-client communication, as well as other records that were withheld because DEC claimed that they pertained to settlement negotiations. Petitioners administratively appealed the redactions and the denial of the alleged privileged documents on January 17, 2017. In their appeal, petitioners specifically referenced two emails that contained redactions and also noted that DEC had not identified what documents were withheld, demanding that "these documents be released or in the alternative fully identified as to [their] content and [the] basis for denial of production. All redacted documents should be produced in toto." Subsequently, in April 2017, after commencement of this action/proceeding, DEC produced the two emails in unredacted form, along with other settlement negotiation documents, which it claimed "were properly withheld" but that DEC had opted to release. DEC also produced a privilege log that identified six documents and the reasons that DEC asserted that those documents were privileged.[FN2]
There can be no dispute that DEC failed to timely respond to petitioners' FOIL appeal (see Public Officers Law § 89 [4] [a])[FN3]. As DEC recognizes in its appellate brief, "[p]etitioners administratively appealed only [DEC's] decision to redact portions of two copies of two emails that had already been produced." Those emails were provided in their entirety, without redactions, only after commencement of this action/proceeding, leading us to the inescapable conclusion that petitioners have substantially prevailed because they received the precise information that they were seeking in their FOIL appeal (see Matter of Whitehead v Warren County Bd. of Supervisors, 165 AD3d 1452, 1454 [2018]; Matter of Competitive Enter. Inst. v Attorney Gen. of N.Y., 161 AD3d 1283, 1286 [2018]). To the extent that DEC asserts that petitioners have not substantially prevailed because the six allegedly privileged documents were never turned over, petitioners cannot be said to have been specifically seeking those six documents in their FOIL appeal as they did not know what documents had actually been withheld. Rather, petitioners were seeking more information on what documents were withheld and why, which is precisely what DEC provided by producing the privilege log. Contrary to DEC's assertion, voluntary release of those documents does not preclude a finding that petitioners substantially prevailed (see Matter of Whitehead v Warren County Bd. of Supervisors, 165 AD3d at 1453; Matter of New York State Defenders Assn. v New York State Police, 87 AD3d at 195-196). Also, although DEC asserts a reasonable basis for initially denying access to [*5]the later released documents, DEC's failure to respond to the FOIL appeal until after the commencement of this action/proceeding constituted a constructive denial that goes against the purpose of FOIL, which is "to create a clear deterrent to unreasonable delays and denials of access and thereby encourage every unit of government to make a good faith effort to comply with the requirements of FOIL" (Matter of New York Civ. Liberties Union v City of Saratoga Springs, 87 AD3d at 338 [internal quotation marks, brackets and citation omitted]; see Matter of Legal Aid Socy. v New York State Dept. of Corrections & Community Supervision, 105 AD3d at 1121-1122). Thus, under these circumstances, we find that an award of counsel fees and costs is warranted and remit the matter to Supreme Court to determine the reasonable amount thereof (see Matter of Legal Aid Socy. v New York State Dept. of Corrections & Community Supervision, 105 AD3d at 1121-1122.).
Lynch, J.P., Mulvey, Devine and Aarons, JJ., concur.
ORDERED that the judgment is modified, on the law, without costs, by reversing so much thereof as granted respondents' motions to dismiss the first three causes of action and as denied petitioners' request for counsel fees and costs; respondents' motions denied to said extent and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.



Footnotes

Footnote 1: The plan and an approval letter from DEC were dated November 16, 2016 and the plan was approved by email on November 15, 2016; however, petitioners were informed in an email by a deputy counsel with DEC that approval for the plan was given on November 17, 2016.

Footnote 2: These six documents were never produced, nor did petitioners ever make any argument that they should be.

Footnote 3: In an April 2017 affirmation of Jennifer Maglienti, an associate counsel for DEC, Maglienti stated that DEC's "FOIL officer ha[d] not yet issued a decision on the appeal."